Ralph W. SPOLJARIC, Petitioner,

v.

PERCIVAL TOURS, INC., et al.,
Respondents.

No. C–4271.

Supreme Court of Texas.

March 19, 1986.

Rehearing Denied May 21, 1986.

dered judgment for Spoljaric and in an unpublished opinion the court of appeals reversed that judgment and rendered judgment for Percival Tours. The principal question before us is whether there is some evidence to support the jury's finding that the employer did not intend to implement a bonus plan at the time he promised to do so. Because we hold there is some evidence to support the jury's finding, we reverse the judgment of the court of appeals and remand the cause to that court for further consideration.

In March, 1978, Ralph W. Spoljaric negotiated with Jessie L. Upchurch, president of Percival Tours, Inc., for Spoljaric's employment with Percival. The parties entered into a written two-year employment contract. Spoljaric took the position of vice president of finance and accountancy at an annual salary of $42,000 per year.

Toward the end of the two-year contract, Spoljaric began to make plans for his future. He made contacts in New York and initiated talks with Upchurch for a new employment contract. In December, 1979, Spoljaric and Upchurch met. Upchurch offered Spoljaric a salary of $50,000 per year to remain with Percival Tours but refused to enter into a second written contract. Spoljaric declined this offer.

The two met the next day, and Spoljaric counter-offered for a salary of $70,000 without a written contract. Upchurch agreed to the higher salary. The two also discussed Spoljaric's increased responsibilities to the company due to the resignation of Mario Balestrieri, executive vice president of operations.

Approximately two weeks later, a third meeting was held between Spoljaric, Upchurch, and Balestrieri. Balestrieri agreed to stay with Percival at the same terms as Spoljaric. A bonus plan was also discussed. Under the proposed plan, Spoljaric and Balestrieri would be paid a 5 percent bonus on any improvement over Percival's net operating loss of 2 million dollars. The bonus would be paid when the company

Timothy F. Lee, Schmidt & Matthews P.C., Houston, Roy L. Stacy, Calhoun, Gump, Spillman & Stacy, Dallas, for petitioner.

Richard L. Brown, Robert W. Blair, Thomas H. Law, Law, Snakard, Brown & Gambill, Fort Worth, for respondents.

McGEE, Justice.

This is a fraudulent misrepresentation case. Ralph Spoljaric sued his former employer for breach of a promise to implement a bonus plan. The trial court ren-

realized a profit. Upchurch instructed Spoljaric to formalize a plan in writing.

It took almost two months for Spoljaric to draft a bonus plan. He gave the draft to Upchurch for his approval. Because Upchurch objected to certain parts, he instructed his corporate secretary, G. Lisle, to draft an alternate provision dealing with the voluntary termination of executive officers. Lisle drafted the requested provision and Upchurch approved the amended bonus plan. However, the record is silent whether Spoljaric ever saw the new amended bonus plan. Spoljaric and Balestrieri made several inquiries over the next eight months about the status of the proposed bonus plan. Upchurch told them that his New York lawyers were reviewing the plan.

In October, 1980, Percival Tours purchased Jackson Travel Agency, Inc., and Jackson Tours. A press release announced that Robert Jackson would thereafter serve as the president and chief operating officer of Percival Tours. Spoljaric read the press release and believed that Jackson had taken his position.

On October 9, 1980, Spoljaric talked to Jackson concerning his position with Percival Tours and the proposed bonus arrangement. Jackson told Spoljaric that he had no knowledge of either. At Spoljaric's request, Jackson approached Upchurch with the original bonus plan draft. Upchurch read it and said that he had no intention of signing it. When Jackson related this to Spoljaric, Spoljaric walked off the job.

Spoljaric brought suit against Percival Tours, Inc., Upchurch Corporation, and Jessie L. Upchurch for breach of oral contract and fraudulent misrepresentation. In answer to issues, the jury found that (1) Upchurch promised Spoljaric that a bonus plan would be implemented to pay Spoljaric a bonus for improvements in Percival's financial condition, (2) this representation was false, (3) when this representation was made, Upchurch did not intend to keep the promise, (4) Spoljaric justifiably relied on this representation to his detriment, and (5) Upchurch breached the oral contract to pay Spoljaric a bonus. The jury awarded Spoljaric $30,000 in actual damages and $750,000 in punitive damages for fraudulent misrepresentation. The trial court directed a remittitur of $690,000 of the punitive damages. Spoljaric remitted this amount under protest, and the trial court rendered judgment on the balance of the jury findings.

Upchurch appealed. The court of appeals reversed and rendered, holding there was no evidence to support the jury's finding that Upchurch did not intend to implement a bonus plan and there was factually insufficient evidence to uphold the oral contract. The court of appeals did not reach Spoljaric's cross-point concerning remittitur.

Spoljaric contends there is legally sufficient evidence to support the jury's finding that Upchurch did not intend to keep his promise to set up a bonus plan. In reviewing a legal sufficiency point, this court will consider the record as a whole, viewing the evidence and inferences most favorable to the jury verdict and disregarding all other evidence and inferences. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965).

■■■ A promise to do an act in the future is actionable fraud when made with the intention, design and purpose of deceiving, and with no intention of performing the act. *Stanfield v. O'Boyle*, 462 S.W.2d 270, 272 (Tex.1971); *Turner v. Biscoe*, 141 Tex. 197, 199, 171 S.W.2d 118, 119 (Tex. Comm'n App.1943, opinion adopted). While a party's intent is determined at the time the party made the representation, it may be inferred from the party's subsequent acts after the representation is made. *Chicago, T. & M.C. Ry. Co. v. Titterington*, 84 Tex. 218, 223, 19 S.W. 472, 474 (1892); *see Smith v. Jungkind*, 252 S.W.2d 596, 599 (Tex.Civ.App.—Austin 1952, writ ref'd). Intent is a fact question uniquely within the realm of the trier of fact because it so depends upon the credibility of the witnesses and the weight to be given to their testimony. *See Benoit v. Wilson*, 150 Tex. 273, 281, 239 S.W.2d 792, 796–797 (1951).

■ Failure to perform, standing alone, is no evidence of the promissor's intent not to perform when the promise was made. However, that fact is a circumstance to be considered with other facts to establish intent. *Titterington,* 19 S.W. at 474; *King v. Wise,* 282 S.W. 570, 573 (Tex.Comm'n App.1926, judgmt adopted). Since intent to defraud is not susceptible to direct proof, it invariably must be proven by circumstantial evidence. *Maulding v. Niemeyer,* 241 S.W.2d 733, 737 (Tex.Civ.App.—El Paso 1951) (orig. proceeding); *Turner v. Biscoe,* 171 S.W.2d at 119. "Slight circumstantial evidence" of fraud, when considered with the breach of promise to perform, is sufficient to support a finding of fraudulent intent. *Niemeyer,* 241 S.W.2d at 738.

Courts have held a party's denial that he ever made a promise is a factor showing no intent to perform when he made the promise. *Stone v. Williams,* 358 S.W.2d 151, 155 (Tex.Civ.App.—Houston 1962, writ ref'd n.r.e.). *See also O'Boyle,* 462 S.W.2d at 272. (Denial of a promise coupled with failure to perform the promise is some evidence of fraudulent intent). No pretense of performance by the defendant has also been held to be a factor showing lack of intent. *Titterington,* 19 S.W. at 474.

The record shows that Upchurch agreed to implement a bonus plan when he was faced with the prospect of losing two executive vice-presidents, Spoljaric and Balestrieri. Viewing this evidence and the inferences therefrom in support of the jury verdict, it is fair to say the jury reasonably believed Upchurch used the bonus plan as an inducement to keep Spoljaric and Balestrieri from leaving the agency.

■ Spoljaric, Balestrieri, and Upchurch tacitly agreed to parts of a bonus plan in December, 1979; but, no plan was implemented by October, 1980, the date Spoljaric left the agency. Eight months passed from the time Spoljaric gave Upchurch a draft of the bonus plan for his approval. Over this period, Spoljaric and Balestrieri made inquiries whether Upchurch was going to approve the proposed plan. Upchurch told them that his New York lawyers were reviewing it. This testimony conflicts with Lisle's testimony that Upchurch had approved an "amended" plan shortly after receiving Spoljaric's draft of a bonus plan. Upchurch had a duty to tell Spoljaric and Balestrieri that he had approved an amended plan. When the particular circumstances impose on a person a duty to speak and he deliberately remains silent, his silence is equivalent to a false representation. *Smith v. National Resort Communities, Inc.,* 585 S.W.2d 655, 658 (Tex.1979). These circumstances are consistent with Upchurch's lack of intent to keep his promise and no pretense of implementing a bonus plan.

■ The record shows that Upchurch refused to give Spoljaric a written employment contract after Spoljaric's first contract expired, while he gave written contracts to Jackson and other employees in similar positions. Conversely, Upchurch insisted on a written bonus plan over an oral agreement to its terms. The jury could have inferred that Upchurch's course of conduct in agreeing to a bonus plan when faced with the prospect of losing Spoljaric and Balestrieri and the inconsistency of Upchurch's insistence on an *oral* employment contract and on a *written* bonus plan is circumstantial evidence that Upchurch never intended to implement a bonus plan. This inference is strengthened by Upchurch's testimony at trial that his other bonus plans were "all being honored to the letter."

There is testimony that can be construed as a denial by Upchurch of his promise to implement a bonus plan. Robert Jackson testified that the day Spoljaric left, Spoljaric asked him to inquire whether Upchurch had approved a bonus plan. Jackson approached Upchurch and handed a copy of Spoljaric's proposed bonus plan to Upchurch, who read it and said, "I have no intention of signing this." This testimony is inconsistent with the fact that Upchurch approved an "amended" plan many months earlier. Upchurch's failure to explain his unequivocal statement that he had approved an amended bonus plan is indicative

of Upchurch's intent not to implement a bonus plan.

Considering all of the circumstantial evidence of Upchurch's lack of intent in conjunction with Upchurch's failure to keep his promise, we hold that a fact issue of Upchurch's intent was raised sufficient to submit the issue to the jury and that there is some evidence to support the jury's answer.

 Spoljaric asserts that there is legally sufficient evidence to support the jury's award of punitive damages for fraudulent misrepresentation. A finding of intent to harm or conscious indifference to the rights of others will support an award of exemplary damages. *Trenholm v. Ratcliff,* 646 S.W.2d 927, 933 (Tex.1983). In *Trenholm,* this court held that a fraudulent inducement was enough to support at least a finding of conscious indifference. *Id.* Our holding of some evidence to support Upchurch's intent to induce Spoljaric by a false representation is some evidence of conscious indifference. Therefore, there is some evidence to support a jury award of punitive damages.

In their briefs, both parties pray that this court remand the case to the court of appeals for consideration of the remaining undisposed points of error. The court of appeals did not consider several of Upchurch's factual insufficiency points and sufficiency and excessiveness of damages points. Neither did it consider Spoljaric's remittitur of punitive damages point. Since these points are not questions of law but questions of fact within the factfinding jurisdiction of the court of appeals, we must remand the cause for consideration of these points. *Stanfield v. O'Boyle,* 462 S.W.2d at 272; TEX. CONST. art. V, sec. 6.

The judgment of the court of appeals is reversed and the cause is remanded to that court for further consideration.

WALLACE, J., files a dissenting opinion in which HILL, C.J., and CAMPBELL and GONZALEZ, JJ., join.

WALLACE, Justice, dissenting.

I respectfully dissent.

For the reasons set out in the court of appeals opinion, I would hold that there was no evidence to support a jury finding that on December 17, 1979, Jessie Upchurch did not intend to keep his promise to Ralph Spoljaric concerning a bonus plan.

The judgment of the court of appeals should be affirmed.

HILL, C.J., and CAMPBELL and GONZALEZ, JJ., join in this dissent.