Claud YELDELL, Appellant,

v.

John GOREN, Appellee.

No. 05–01–01071–CV.

Court of Appeals of Texas, Dallas.

May 28, 2002.

F.2d at 317.

Scott M. Anderson, Dallas, for appellant.

John Alan Goren, Dallas, pro se.

Before Justices LAGARDE, MOSELEY, and BRIDGES.

## OPINION

Opinion by Justice BRIDGES.

Claud Yeldell appeals the trial court's judgment in favor of John Goren on Goren's contract and fraud claims. In two issues, Yeldell argues the trial court erred in entering a judgment for fraud and exemplary damages in this breach of contract suit. We affirm the trial court's judgment.

Yeldell was a defendant in a prior lawsuit involving the purchase of real property from Dorothy and Diane Chatham. Clyde Carter had previously entered into a contract to purchase the property from the Chathams. When some of Carter's checks bounced, the Chathams entered into the contract with Yeldell. After Yeldell had renovated the property, however, Carter sued for specific performance of his earlier contract. A default judgment was entered against the Chathams, and summary judgment was entered against Yeldell and the Chathams when the trial court struck Yeldell's response to Carter's motion for summary judgment. Final judgment in the prior case was entered on December 28, 1998. Thereafter, Yeldell hired Aaron Kaufman to represent him. Kaufman, perceiving a conflict of interest in representing both Yeldell and the Chathams, contacted Goren.[1] Goren agreed to represent the Chathams if Yeldell would pay his fees.

Yeldell came to Goren's office and, although a contract was never signed, paid $850 in cash for Goren to represent the Chathams through the motion for new tri-al. After the trial court granted the motion for new trial in the prior case, Goren filed an answer and counterclaim on behalf of the Chathams. The pleadings asserted Diane Chatham was entitled to attorney's fees under chapter 38 of the Texas Civil Practice and Remedies Code because she had hired Goren and agreed to pay his fees. The prior case was subsequently dismissed.

In early 2000, Yeldell found a buyer for the subject property and contacted Goren about assisting with the closing. Yeldell agreed to pay Goren out of the closing. However, Yeldell denied Goren was his attorney and refused to pay Goren further. Goren sued Yeldell, alleging breach of contract and fraud causes of action. This is the case before us. Yeldell did not appear at trial; thus, the record in this case consists entirely of Goren's pleadings, exhibits, and testimony. The trial court entered judgment awarding Goren $1336.55 for Yeldell's breach of contract, plus prejudgment interest and attorney's fees. The judgment further awarded $600 damages for Yeldell's fraud and $2400 in punitive damages. This appeal followed.

In his first issue, Yeldell argues the trial court erred in entering a judgment for fraud because this case involved a contractual agreement for legal services and the payment of fees. Specifically, Yeldell challenges the court's award of damages for fraud when this case involved a breach of contract. In his second issue, Yeldell argues that, because the underlying suit was for breach of contract, exemplary damages were not recoverable. Yeldell does not challenge the trial court's award of damages for his breach of contract.

---

1. We make no determination whether a conflict of interest actually existed. *See* Tex. Disciplinary R. Prof'l Conduct 1.06(a), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G app. A (Vernon 1998) (Tex. State Bar R. art. X, § 9) (lawyer shall not represent opposing parties to same litigation).

Tort damages are recoverable for a fraudulent inducement claim irrespective of whether the fraudulent representations are later subsumed in a contract or whether the plaintiff only suffers an economic loss related to the subject matter of the contract. *Formosa Plastics Corp. v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex.1998). Allowing the recovery of fraud damages sounding in tort only when a plaintiff suffers an injury that is distinct from the economic losses recoverable under a breach of contract claim is inconsistent with this well-established law and also ignores the fact that an independent legal duty, separate from the existence of the contract itself, precludes the use of fraud to induce a binding agreement. *Id.* If a plaintiff presents legally sufficient evidence on each of the elements of a fraudulent inducement claim, any damages suffered as a result of the fraud sound in tort. *Id.*

A fraud cause of action requires "a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury." *Id.* (quoting *Sears, Roebuck & Co. v. Meadows*, 877 S.W.2d 281, 282 (Tex.1994)). A promise of future performance constitutes an actionable misrepresentation if the promise was made with no intention of performing at the time it was made. *Formosa*, 960 S.W.2d at 48. However, the mere failure to perform a contract is not evidence of fraud. *Id.* Rather, Goren had to present evidence that Yeldell made representations with the intent to deceive and with no intention of performing as represented. *See id.*

While a party's intent is determined at the time the party made the representation, it may be inferred from the party's subsequent acts after the representation is made. *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986). Intent is a fact question uniquely within the realm of the trier of fact because it so depends upon the credibility of the witnesses and the weight to be given their testimony. *Id.* Because intent to defraud is not susceptible to direct proof, it invariably must be proven by circumstantial evidence. *Id.* at 435. Slight circumstantial evidence of fraud, when considered with the breach of a promise to perform, is sufficient to support a finding of fraudulent intent. *Id.* In our review of the trial court's finding that Yeldell committed fraud, all of the record evidence must be considered in a light most favorable to the party in whose favor the judgment has been rendered, and every reasonable inference deducible from the evidence is to be indulged in that party's favor. *See Formosa*, 960 S.W.2d at 48. Anything more than a scintilla of evidence is legally sufficient to support the finding. *Id.*

This record indicates Yeldell hired Kaufman, who perceived a conflict in representing both Yeldell and the Chathams. Kaufman called Goren and asked if he would represent the Chathams in an effort to have the final judgment set aside. Kaufman said the Chathams did not have the financial resources to pay Goren, but Kaufman told Goren he would ask Yeldell to pay Goren. Goren agreed to represent the Chathams only if Yeldell would pay his legal fees. Kaufman later telephoned Goren and said Yeldell had agreed to pay Goren's fees. Although Goren agreed to represent the Chathams and file a motion for new trial, there was no written contract, either between Goren and Yeldell or Goren and the Chathams.

Some time later, Yeldell came to Goren's office and paid $850 cash for Goren's advance fee and for filing a motion for new trial, which the trial court subsequently

granted. Thereafter, Goren drafted pleadings, participated in mediation, and consulted with Yeldell. Before the mediation, Goren confirmed through Kaufman that Yeldell agreed to pay the mediator's fee on behalf of the Chathams. Nevertheless, Yeldell did not pay the mediator's fee despite Goren's reminders that the fee remained unpaid and inclusion of the $325 fee in his billing of Yeldell. After the mediation, Carter's counsel withdrew and, when Carter failed to appear, the judge signed an order of dismissal without prejudice on October 19, 1999. Before and after the dismissal, Yeldell consulted with Goren and asked for legal advice. Accordingly, a month after the dismissal, Goren billed Yeldell for $1336.55, which included the mediator's fee. Yeldell later told Goren he had no money and wanted to pay Goren when the property was sold. Goren agreed to this arrangement.

Subsequently, Yeldell called Goren several times to confirm the amount he owed. Yeldell continued to consult Goren on legal matters related to his purchase of the property. More than once, Goren suggested Yeldell should ask Kaufman to help him, but Yeldell said Kaufman had told him Kaufman "had done all he could do." Goren told Yeldell he expected to be paid for his additional services. Yeldell indicated he understood and assured Goren he would be paid at closing. In another conversation, Yeldell asked Goren to call the closing lawyer and the underwriter for the title insurance company involved in Yeldell's purchase of the Chathams' property. Goren contacted Tonya Jones, the closing lawyer, and a representative of the title company. In particular, the title company was concerned about the possibility that Carter would file another suit involving the property. After consulting with Jones, Goren proposed an escrow of $1500 which Goren stated would protect the title company in the event Carter filed another suit. The title company sent Goren a copy of their proposed escrow agreement. After learning of Carter's death, the title company subsequently agreed that the closing could proceed without the escrow agreement. On April 10, 2000, Goren wrote Yeldell and stated that, although Goren had not recorded his time, he was entitled to an additional $400 for assisting in the closing, and he wanted to be paid out of the closing.

On May 15, 2000, Goren had not been paid, and he contacted Jones. Jones said the sale of the property closed on April 20, 2000, but Yeldell had not instructed her to pay Goren out of the proceeds. Jones said more than $1600 was in escrow and suggested Goren fax his bill to her. Three days later, however, Jones told Goren that Yeldell had called her and said Goren never represented him, and he owed Goren no money. Yeldell went to the title company, gave Jones a letter stating "Do not pay John Goren any money. He was not my attorney and has never represented me in any matter," and withdrew the money still held by the title company.

We conclude this evidence is legally sufficient to show Yeldell promised to pay Goren for his efforts on behalf of the Chathams and in connection with the closing, assured Goren he would be paid at closing, but never intended to pay Goren. *See Formosa,* 960 S.W.2d at 46–48. Thus, the trial court did not err in concluding Yeldell committed fraud, and exemplary damages were therefore recoverable. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 41.003(a)(1) (Vernon 1997) (exemplary damages recoverable where harm with respect to which claimant seeks recovery of exemplary damages results from fraud). Yeldell's first and second issues lack merit.

We affirm the trial court's judgment.