Desmond T. HENSON, Appellant,

v.

SOUTHWEST AIRLINES COMPANY, Appellee.

No. 05–04–01413–CV.

Court of Appeals of Texas, Dallas.

Nov. 30, 2005.

Rehearing Overruled Jan. 12, 2006.

Joseph R. Willie, Willie & Associates, P.C., Houston, for Appellant.

Pamela C. Hicks and William L. Maynard, Beirne, Maynard & Parsons, L.L.P., Houston, for Appellee.

Before Justices LANG, LANG–MIERS, and MAZZANT.

## OPINION

Opinion by Justice MAZZANT.

Desmond T. Henson appeals the trial court's order granting summary judgment for Southwest Airlines Company. In two issues, he argues that the trial court erred in concluding that his malicious prosecution and negligence claims were preempted by federal law, and that the issues raised in Southwest's no-evidence motion for summary judgment are not properly before the court. We affirm the trial court's judgment.

### FACTUAL BACKGROUND

Appellant purchased a one-way ticket with cash for a Southwest flight from St. Louis, Missouri to Houston, Texas. After passing through security but before reaching the gate, he was detained and searched by agents of the Drug Enforcement Administration (DEA). During the search agents found an unloaded handgun in appellant's checked baggage. The Federal Aviation Administration (FAA) subsequently brought a civil enforcement action against appellant for not declaring the weapon.

In its notice of appearance and witness list in the civil administrative action, the FAA identified Shannon Boland, a ticket counter agent for Southwest, as a witness. Southwest alleged that it expected Boland to testify that Henson purchased a one-way ticket with cash; she accepted Henson's bag and put it on the conveyor belt; Henson did not declare the weapon when he checked-in his luggage; and she later assisted the DEA in retrieving the bag. However, the FAA subsequently withdrew the civil administrative action, and the case was dismissed

Henson then brought this lawsuit against Southwest alleging malicious prosecution and negligence. He claims that as he checked in his luggage, the ticket counter agent placed a 'red tag' on his checked bag. After he was taken to a secure room and searched, the DEA agents told him he had been stopped and searched because they were notified by the ticket counter that he looked suspicious, and a 'red tag' had been placed on his checked bag. He further alleges the detention, search, and subsequent FAA administrative complaint were brought about because Boland informed the DEA that he fit the profile of a potential drug courier due to his cash purchase of a one-way ticket. He claims Boland did not have any good faith basis to

believe he was a drug courier, and he was the victim of "racial and pecuniary profiling."

Southwest pleaded federal preemption and moved for summary judgment. The trial court granted Southwest's motion for summary judgment, denied Henson's motion for partial summary judgment, and entered judgment that Henson take nothing.[1] This appeal followed.

## PREEMPTION

Rule 166a(c) of the Texas Rules of Civil Procedure provides the standard of review for summary judgments. TEX.R. CIV. P. 166a(c); *Moore*, 143 S.W.3d at 341. In reviewing summary judgments, evidence favorable to the nonmovant will be taken as true. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). Every reasonable inference in favor of the nonmovant is allowed, and all doubts are resolved in his favor. *Id.* at 548–49.

The party moving for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Nixon*, 690 S.W.2d at 548. A defendant moving for summary judgment must either (1) disprove at least one element of the plaintiff's theory of recovery or (2) plead and conclusively establish each essential element of an affirmative defense. *Biaggi v. Patrizio Rest., Inc.*, 149 S.W.3d 300, 303 (Tex.App.-Dallas 2004, pet. filed) (citing *Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex.1979)).

Preemption is an affirmative defense. *Stier v. Reading & Bates Corp.*, 992 S.W.2d 423, 436 (Tex.1999); *Kiefer v.*

*Cont'l Airlines, Inc.*, 882 S.W.2d 496, 497–98 (Tex.App.-Houston [1st Dist.] 1994), *aff'd,* 920 S.W.2d 274 (Tex.1996). When a defendant moves for summary judgment based on an affirmative defense, the defendant has the burden to prove conclusively all the elements of the affirmative defense as a matter of law. *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex.1984). Unless the defendant conclusively establishes the affirmative defense, the nonmovant plaintiff has no burden in response to the defendant's motion for summary judgment filed on the basis of an affirmative defense. *Torres v. West. Cas. & Sur. Co.*, 457 S.W.2d 50, 52 (Tex.1970).

Federal preemption of state law is based on the Supremacy Clause of the United States Constitution, which provides that "the Laws of the United States ... shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. CONST., art. VI, cl. 2. Under the Supremacy Clause, if a state law conflicts with federal law, the state law is preempted and "without effect." *Maryland v. Louisiana*, 451 U.S. 725, 746, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981). Preemption may be either express or implied. *Delta Air Lines, Inc. v. Black*, 116 S.W.3d 745, 748 (Tex.2003).

Southwest argues that Henson's malicious prosecution and negligence claims are preempted by section 41713(b)(4)(A) of the Airline Deregulation Act (the Act), which provides:

A State, political subdivision of a State, or political authority of 2 or more States

---

1. Southwest moved for summary judgment based on both federal preemption and no evidence. The trial court's order does not specify the basis on which it granted summary judgment, so we may affirm the summary judgment if any of the grounds raised in the motion are meritorious. *Moore v. Johnson*, 143 S.W.3d 339, 341 (Tex.App.-Dallas 2004, no pet.).

may not enact or enforce a law, regulation, or other provision having the force and effect of law *related to* a price, route, or service of an air carrier or carrier affiliated with a direct air carrier through common controlling ownership when such carrier is transporting property by aircraft or by motor vehicle (whether or not such property has had or will have a prior or subsequent air movement).

49 U.S.C. § 41713(b)(4)(A) (emphasis added). Through this provision, Congress expressly preempted state law as applied to the price, route, or service of an air carrier. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992). The words of the statute express a "broad pre-emptive purpose." *Id.*

Several cases interpreting the Act's preemption clause guide our analysis of section 41713 and its application to these facts. In *Morales,* the issue was whether the Act prevented enforcement of guidelines affecting the regulation of airline fare advertising under the Texas Deceptive Trade Practices Act. *Morales,* 504 U.S. at 378, 112 S.Ct. 2031. The Court construed the phrase "related to" broadly to preempt "State enforcement of actions having a connection with, or reference to, airline 'rates, routes, or services.'" *Id.* at 384, 112 S.Ct. 2031. Citing this "broad preemptive purpose," the Court rejected the idea that the preemption clause only prevented states from actually setting routes, rates, or services, or that only state laws aimed specifically at the airline industry were preempted. *Id.* at 384–86, 112 S.Ct. 2031. While acknowledging that "'some state actions could affect [airline fares] in too tenuous, remote, or peripheral a manner,' to have preemptive effect," it concluded that the advertising regulations at issue would have a "forbidden significant effect" on airline rates, routes and

services—and were therefore preempted—because they restricted fare advertising, which in turn "related to" price. *Id.* at 389–91, 112 S.Ct. 2031 (quoting *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 100, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983)).

In *American Airlines, Inc. v. Wolens,* 513 U.S. 219, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995), the only other recent Supreme Court case addressing the scope of section 41713, the issue was whether state law consumer fraud and breach of contract claims arising from retroactive changes in a frequent flyer program were preempted under the Act. *Id.* at 224–25, 115 S.Ct. 817. Citing another portion of section 41713— "enact or enforce any laws"—the Court held that the consumer fraud statute, like the advertising guidelines in *Morales,* "serves as a means to guide and police the marketing practices of the airlines." *Id.* The Act therefore preempted the consumer fraud claims. The state law breach of contract claims, however, were not preempted. The Court held that section 41713 did not protect the airlines from "suits alleging . no violation of state-imposed obligations, but seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings." *Id.* at 228, 115 S.Ct. 817.

The Texas Supreme Court first addressed the scope of the Act's preemption in *Continental Airlines, Inc. v. Kiefer,* 920 S.W.2d 274 (Tex.1996). In *Kiefer,* the issue was whether "state common-law personal-injury negligence actions against airlines are preempted by the [Act]." *Id.* at 275. In one case, the plaintiff alleged she was injured when she was hit on the back of the head by a briefcase that fell from an overhead storage bin. *Id.* In the other case, the plaintiff, who suffered from mental illness, alleged he was injured because the airline failed to provide an agent to

meet and assist him in transferring to a connecting flight. *Id.* Citing *Morales* and *Wolens,* the court applied a two-part analysis to determine whether the plaintiffs' personal injury claims were preempted. First, it asked whether the claims related to airline rates, routes, or services. Second, the court determined whether the claims constituted the enactment or enforcement of a state law, rule, regulation, standard, or other provision. *Id.* at 281–82. Applying this analysis, the court held that, although the personal injury claims related to airline services, the claims did not amount to enforcement of a state law and, thus, were not preempted. *Id.* at 282. However, the court was careful to note that even common law negligence claims could potentially run afoul of section 41713, depending on the damages sought:

> With certain reservations, we think negligence law is not so policy-laden in imposing liability for personal injuries that suits for damages like those before us are preempted by the ADA. We recognize that with negligence law, and other tort law, there is a greater risk that state policies will be too much involved than there is with contract law, especially in the area of damages. For example, recovery of punitive damages for negligence is, depending on the State involved, essentially unlimited, limited by judicial rule, limited by statute, shared between the plaintiff and the state, or disallowed altogether. One could easily argue that the threat of punitive damages against airlines has a greater regulatory effect than liability for actual damages. Also, recovery of damages for mental anguish may or may not require accompanying physical injury, or aggravated conduct by the defendant, or be subject to other restrictions. Such differences could fall within the concerns argued by the DOT in *Wolens,* but these differences are minimal in the cases before us. Plaintiffs in neither case seek punitive damages, and we cannot determine from the limited summary judgment records how significant the mental anguish claims may be. Of course, plaintiffs may amend their pleadings before trial to claim punitive damages, but we decline to speculate whether such claims would, in these cases or other situations, be preempted by the ADA.

*Id.*

In *Delta Air Lines, Inc. v. Black,* a passenger whose spouse was denied a first-class seat on an over-booked flight filed suit against the airline for breach of contract, fraud and misrepresentation. *Delta,* 116 S.W.3d 745 (Tex.2003). Applying the two-part analysis in *Kiefer,* the court compared cases from the U.S. Ninth Circuit, which narrowly construe services, *see Charas v. Trans World Airlines, Inc.,* 160 F.3d 1259, 1261 (9th Cir.1998), with the Fifth Circuit's more expansive interpretation of services to include "ticketing, boarding procedures, provision of food and drink, and baggage handling, in addition to the transportation itself," *see Hodges v. Delta Airlines, Inc.,* 44 F.3d 334, 336 (5th Cir.1995), and concluded that claims involving boarding and seating procedures fall within most courts' definition of services. *Black,* 116 S.W.3d at 753 n. 5 (citing additional authorities). The court also concluded that the plaintiff's claims, if allowed to proceed, would constitute state enforcement or enactment of a state law under section 41713. The court noted that "[i]f passengers were permitted to challenge airlines' boarding procedures under state common law, the airline industry would potentially be subject to regulation by fifty different states." *Id.* at 756. The court likewise concluded that the plaintiff's misrepresentation and fraud claims were preempted because they were premised on the airline's ticketing and boarding proce-

dures, and therefore directly related to airline services. *Id.* Rejecting the court of appeals analysis, the court observed that state tort actions can constitute state enforcement under section 41713 because of the regulatory effect of state law damage claims and their potential for frustrating congressional objectives. *See id.* (citing *San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 247, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959)).

■ We begin with the first part of the *Kiefer* analysis: Do Henson's claims relate to airline prices or service? We believe the answer to this question is yes. Federal aviation regulations require every airline to screen passengers and property. 14 C.F.R. § 201 (2002). These same regulations require passengers and airlines to follow certain procedures when a passenger transports a firearm. *Id.* According to the affidavit of Kathleen Stewart, the manager of airport security for Southwest, the federal government requires Southwest to use a computer-assisted passenger screening system (CAPS) as part of its Aircraft Operator Standard Security Program. When passengers either check-in or purchase a ticket at the airport, the airline's reservation computer informs the employee whether any given passenger is selected for additional screening. Some passengers are selected for additional screening based on various factors which are analyzed by the CAPS system; a certain number are selected at random. But it is the security system that identifies which passengers are subject to additional security checks. Southwest employees do not determine which passengers are subject to additional security screening, and they have no discretion to deviate from CAPS. The summary judgment evidence therefore establishes, as a matter of law, that Southwest employees have no discretion in determining which passengers are subject to additional security screening,

and that the ticketing agent's actions were based on mandatory federal aviation security screening regulations directly affecting airline services through ticketing and baggage-handling procedures. *See Black,* 116 S.W.3d at 752–53.

■ Turning to the second part of the analysis, we note that although *Black* did not specifically consider malicious prosecution or negligence claims, Henson's tort claims include elements that both *Black* and *Kiefer* suggest would constitute an impermissible state enactment or enforcement of policies. First, Henson asserts a claim for punitive damages. *Kiefer* acknowledges that recovery for punitive damages is a factor that "could easily ... [have] a greater regulatory effect than liability for actual damages." *Kiefer,* 920 S.W.2d at 282; *see also Black,* 116 S.W.3d at 751 ("And depending on the nature and extent of the damages sought, even simple negligence actions may constitute an impermissible regulation of the airline industry through state tort law."). Second, he makes a claim for mental anguish. This is yet another factor that could have an adverse regulatory affect on the airline industry. *Kiefer,* 920 S.W.2d at 282 (noting that "recovery of damages for mental anguish may or may not require accompanying physical injury, or aggravated conduct by the defendant, or be subject to other restrictions."). Third, allowing state courts to adjudicate tort law claims arising out of an airline's use of federally mandated security screening procedures has the potential for undermining the federal regulatory scheme and subjecting airlines to inconsistent multi-state litigation. This problem was recognized by the Texas Supreme Court in *Black:*

> The fact that federal regulations expressly address airline boarding procedures strengthens our conclusion that Black's breach of contract claims resulting from Delta's boarding and seating

procedures are preempted by the ADA. To hold otherwise could create extensive multi-state litigation, launching inconsistent assaults on federal deregulation in the airline industry, every time an airline reassigned a passenger's seat. *Black,* 116 S.W.3d at 756; *see also Morales,* 504 U.S. at 378, 112 S.Ct. 2031 (noting that the Act's preemption provision is intended "[t]o ensure that the States would not undo federal deregulation with regulation of their own").

What clearly distinguishes this case is not just that Henson seeks exemplary damages and asserts mental anguish, but that his claims are based on "violation of state-imposed obligations," i.e. federally imposed passenger screening procedures, and not "the airline's alleged breach of its own, self-imposed undertakings." *See Wolens,* 513 U.S. at 228, 115 S.Ct. 817.[2] We conclude the summary judgment evidence in this case establishes, as a matter of law, the affirmative defense of preemption under section 41713(b)(4)(A) of the Act. Furthermore, Henson failed to present summary judgment evidence raising an issue of fact precluding summary judgment. Therefore, the trial court did not err in granting summary judgment in Southwest's favor. Because of this conclusion, we will not address Henson's second issue.

The judgment of the trial court is affirmed.

---

**2.** In addition to *Kiefer,* Henson relies on *Lewis v. Continental Airlines, Inc.,* 40 F.Supp.2d 406 (S.D.Tex.1999), which concerned a lawsuit brought by an airline passenger who was arrested, incarcerated and released after allegedly making terroristic threats following a dispute over a missed flight. After reviewing United State Supreme Court and lower court federal precedent, the court concluded that Lewis's state law claims were not preempted because the connection was too tenuous. The decision, however, does not address *Kiefer* and predates *Black,* so its relevance to the present case is questionable at best. Furthermore, there is no discussion of damages and no indication that federally mandated security screening procedures were an issue in the case.