

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-20-00057-CV

_____

MICHAEL SLOGGETT, Appellant

V.

LACORE ENTERPRISES, LLC, Appellee

_____

On Appeal from the 429th District Court
Collin County, Texas
Trial Court No. 429-02904-2019

_____

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

Seeking to "make hay" in the new cannabinoid industry in Texas, LaCore Enterprises, LLC (LaCore), in August 2018, hired Michael Sloggett (Sloggett) as the chief operating officer of a new operation or division of LaCore to use Sloggett's "expertise to develop a premier vertically integrated operation to grow, process[,] manufacture[,] and sell bulk [cannabinoid] goods and finished [cannabinoid] materials." After Sloggett had been working for LaCore for approximately three months, LaCore terminated Sloggett's employment. This case arose from the resulting dispute over whether Sloggett retained an equity stake in the new operation.

Sloggett sued LaCore alleging causes of action for breach of contract, fraud, and breach of fiduciary duty. LaCore filed a traditional motion for summary judgment on each of Sloggett's claims, arguing, among other things, (a) that the summary judgment evidence conclusively negated the breach and damages elements of Sloggett's contract claim and (b) that LaCore was entitled to summary judgment as a matter of law on Sloggett's fraud and breach of fiduciary duty claims pursuant to the economic-loss rule. The 249th Judicial District Court in Collin County[1] granted summary judgment in favor of LaCore. Sloggett appeals, maintaining that he presented summary judgment evidence to show a genuine issue of material fact regarding the terms of the contract and the alleged resulting damages, that the economic-loss rule did not prohibit him from filing both a contract claim and a fraud claim, and in the alternative, that Sloggett presented summary judgment evidence regarding an ambiguity in the contract.

---

[1]Originally appealed to the Fifth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001. We follow the precedent of the Fifth Court of Appeals in deciding this case. *See* TEX. R. APP. P. 41.3.

We hold that (1) the employment contract unambiguously provided Sloggett a 1.5% equity stake in the new operation unconditioned on continued employment, so summary judgment for LaCore on the breach aspect of this claim was improper; (2) fact questions exist regarding Sloggett's damages resulting from LaCore's denial of the equity-stake claim, post termination; (3) the economic-loss rule does not foreclose Sloggett's fraudulent-inducement claim; (4) fact questions exist regarding whether LaCore intended to perform when it contracted with Sloggett; and (5) Sloggett's complaint that LaCore breached a fiduciary duty to him has been forfeited on appeal for failure to present an appellate argument on that issue. Therefore, as to holding (5), we affirm the summary judgment on just that point; but, as to holdings (1) through (4),[2] we reverse the summary judgment and remand this matter to the trial court for further proceedings consistent with this opinion.

LaCore, a health supplement company, was formed on February 28, 2011.[3] In or around June 2018, Sloggett met with Terry LaCore (Terry) and Jennifer Grace (Grace) about the possibility of creating a new business in the CBD industry or adding a new division to LaCore's existing business. On August 15, 2018, LaCore and Sloggett entered into a letter agreement (the Agreement), which stated, in part, as follows:

> LaCore Enterprises, LLC is excited to make the following offer for employment with a newly created division of LaCore Enterprises focusing on the

---

[2]Sloggett also complains on appeal that the trial court erroneously denied Sloggett's motion for leave to take Terry LaCore's deposition and related motion for continuance and erroneously sustained LaCore's objection to a portion of Sloggett's declaration attached to his response to LaCore's motion for summary judgment. Because of our disposition today, we do not address those contentions.

[3]The operating agreement was entered into by LaCore and Terry LaCore, the sole member.

cannabinoid industry.[4]  LaCore Enterprises would like to engage you to serve as COO of the newly formed entity and use your expertise to develop a premier vertically integrated operation to grow, process[,] manufacture[,] and sell bulk goods and finished materials.

LaCore Enterprises, through the newly created entity is happy to offer you the following benefits related to your position:

1.     Salary of $200,000 annually, which will be paid in accordance with the regularly schedule payroll of LaCore Enterprises;[5]

2.     Access to employee health benefits of:
    a.    Fresh Bennies[6]
    b.    Texas Health Resource Aetna benefits (available 90 days after start date)
    c.    Dental and Vision Benefits
    d.    Access to 401K (available six months after start date)

3.     Equity stake in the parent NEWCO at the rate of 1.5% (current expected valuation of $100,000,000).

In exchange Sloggett agreed to:

1.     Dedicate [his] full efforts in the cannabinoid space to the operation of the NEWCO or one of its subsidiary entities.

2.     Assist with establishment of each subsidiary entity via contacts and expertise held in the various fields including, but not limited to gaining rights to growing locations, cultivation, growing, processing, extraction, finished goods formulation, and sales.

The Agreement did not contain any terms that would prevent LaCore from terminating

Sloggett's employment at any time.  Likewise, it did not state a duration of employment or

[4]The newly created company was eventually called SSBio.  The parties have used the term NEWCO and SSBio interchangeably.  For clarity, we will refer to the company as SSBio.

[5]Sloggett concedes that he was paid commensurate with his annual salary during each of the pay periods that he was employed as LaCore's chief operating officer.

[6]Evidence does not clarify what this means, but it is not material in this appeal.

4

prescribe the conditions from which its duration could be determined. The Agreement was signed by Sloggett and LaCore's manager, Grace, and the parties agree that it was a valid Agreement.

On October 1, 2018, without Sloggett's knowledge, Terry, as president of SSBio, and Grace, as its secretary and treasurer,[7] filed the company's articles of incorporation in Nevada. About one month later, after Sloggett had been working for LaCore for approximately three months, LaCore terminated Sloggett's employment by letter, stating:

> This is to inform you that your employment with LaCore . . . will be terminated effective on the 9th day of November, 2018.
>
> Your position has been terminated with cause as a result of:
>
> - Failure to dedicate your full efforts in the cannabinoid space as required by your August 15, 2018 letter Agreement; and
>
> - Breach of duty of loyalty.

Grace signed Sloggett's termination letter. On December 28, 2018, the board of directors of SSBio, which consisted of Terry[8] and Grace,[9] agreed to "accept the following offers [from Terry] to purchase [100% of the] shares of Capital Stock of [SSBio]."

According to Sloggett, his 1.5% equity interest in SSBio vested at the time he signed the Agreement and began working for the company. Sloggett claimed that LaCore failed to tender his 1.5% equity stake in SSBio in accordance with the Agreement, and on May 30, 2019, he sued

---

[7]Grace also happened to be LaCore's secretary and lawyer.

[8]Terry served as the president of the company and the board's chairperson.

[9]Grace served as the company's secretary and secretary of the board of directors.

5

LaCore for fraud, breach of contract, and breach of fiduciary duty.[10] Sloggett sought actual damages, punitive damages, and benefit-of-the-bargain damages. LaCore filed a traditional motion for summary judgment on Sloggett's claims, arguing that LaCore's summary judgment evidence conclusively negated the breach and damage elements of Sloggett's breach of contract claim and that it was entitled to judgment as a matter of law on Sloggett's fraud and fiduciary duty claims pursuant to the economic-loss rule. After a hearing on LaCore's motion, the trial court entered summary judgment in LaCore's favor as to all of Sloggett's claims.

Sloggett appeals, maintaining that the trial court erred when it entered summary judgment in favor of LaCore.

An appellate court reviews a summary judgment de novo. *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994). A trial court properly grants a defendant's traditional motion for summary judgment if the movant conclusively proves every element of an affirmative defense or conclusively disproves an essential element of the plaintiff's claim. *Henson v. Sw. Airlines Co.*, 180 S.W.3d 841, 843 (Tex. App.—Dallas 2005, pet. denied) (citing *Biaggi v. Patrizio Rest., Inc.*, 149 S.W.3d 300, 303 (Tex. App.—Dallas 2004, pet. denied) (citing *Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–80 (Tex. 1979))). We must take evidence favorable to the nonmovant as true, "indulging every reasonable inference and resolving any doubts against the motion." *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006) (per curiam) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005)). When a trial court's order granting summary judgment does not specify the basis for the ruling, "we must affirm the summary judgment if any

---

[10]On appeal, Sloggett does not argue that the trial court erred in granting summary judgment in favor of LaCore on his claim for breach of fiduciary duty.

6

of the theories presented to the trial court and preserved for appellate review are meritorious."

*Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003) (citing *Cincinnati Life Ins. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996)).

*(1) The Employment Contract Unambiguously Provided Sloggett a 1.5% Equity Stake in the New Operation Unconditioned on Continued Employment, so Summary Judgment for LaCore on the Breach Aspect of this Claim Was Improper*

Sloggett sued LaCore for breach of contract based on the allegation that the company failed to tender his 1.5% stake in SSBio, in violation of the terms contained in the parties' Agreement. LaCore filed a traditional motion for summary judgment,[11] arguing that the Agreement clearly conditioned Sloggett's 1.5% equity stake in SSBio on his continued employment and that LaCore was not obligated to tender Sloggett's 1.5% equity stake in SSBio after it legally terminated his employment. Consequently, according to LaCore, it did not breach the Agreement.

To prevail on a breach of contract claim, a plaintiff must show "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach." *Woodhaven Partners, Ltd. v. Shamoun & Norman, L.L.P.*, 422 S.W.3d 821, 837 (Tex. App.—Dallas 2014, no pet.). In this case, neither party maintained that the Agreement was invalid, and LaCore did not contest Sloggett's claim that he began working for SSBio. Accordingly, any remaining issues relate to the breach and damages elements of Sloggett's breach of contract claim.

---

[11]In support of its motion, LaCore attached the Agreement and portions of Sloggett's deposition.

7

In this case, the breach element of Sloggett's claim is directly dependent on the interpretation of the terms of the Agreement. "The primary concern of a court in construing a written contract is to ascertain the true intent of the parties as expressed in the instrument." *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998) (quoting *National Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995) (per curiam)). To do that, "we examine the entire agreement in an effort to harmonize and give effect to all provisions of the contract so that none will be meaningless." *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 652 (Tex. 1999) (citing *City of Midland v. Waller*, 430 S.W.2d 473, 478 (Tex. 1968)).

Determining whether a contract is ambiguous is a question of law for the court. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). A contract "is ambiguous when its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). "A contract is not ambiguous if it can be given a definite or certain meaning as a matter of law." *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996) (citing *CBI*, 907 S.W.2d at 520). Further, "[a]n ambiguity does not arise simply because the parties advance conflicting interpretations of the contract." *Id.* (citing *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex. 1994)). Instead, "[f]or an ambiguity to exist, both interpretations must be *reasonable*. *Id.* (citing *CBI*, 907 S.W.2d at 520). Here, because the language in the Agreement can be given a definite legal meaning and it is not reasonably susceptible to more than one meaning, it is unambiguous.

"[T]he 'intent of the parties must be taken from the agreement itself, not from the parties' present interpretation, and the agreement must be enforced as it is written.'" *Calpine Producer Servs., L.P. v. Wiser Oil. Co.*, 169 S.W.3d 783, 787 (Tex. App.—Dallas 2005, no pet.) (quoting *Parts Indus. Corp. v. A.V.A. Servs., Inc.*, 104 S.W.3d 671, 678 (Tex. App.—Corpus Christi 2003, no pet.)). "This is often considered as the 'Four Corners Rule' which means that the intention of the parties is to be ascertained from the instrument as a whole and not from isolated parts thereof." *Id.* (citing *Stine v. Stewart*, 80 S.W.3d 586, 589 (Tex. 2002) (per curiam)). "Moreover, a court will not change the contract merely because it or one of the parties comes to dislike its provisions or thinks that something else is needed." *Id.* (citing *Natural Gas Clearinghouse v. Midgard Energy Co.*, 113 S.W.3d 400, 407 (Tex. App.—Amarillo 2003, pet. denied)). The court does not consider the parties' subjective intent. *Id.* (citing *Vincent v. Bank of Am., N.A.*, 109 S.W.3d 856, 867 (Tex. App.—Dallas 2003, pet. denied)). "When the contract is unambiguous, the court shall apply the pertinent rules of construction, apply the plain meaning of the contract language, and enforce the contract as written." *Id.*

Pointing to the contract language stating that Sloggett's benefits were "related to" his employment, LaCore argued that Sloggett's 1.5% equity stake in SSBio operated under the same circumstances as the other benefits; that is, on the termination of his employment, Sloggett lost all his benefits, including the 1.5% equity stake in SSBio. LaCore's argument is less than compelling. LaCore did, in fact, offer Sloggett a position in a company that was yet to be created. A large part of Sloggett's responsibilities directly related to the creation and organization of the business of that very company. Moreover, and as LaCore points out, the

9

Agreement stated that Sloggett would receive a variety of benefits "related to" his employment. Yet, LaCore directs us to the "related to" language without considering the remainder of the document. Courts have long held that we must examine and consider the entire writing to harmonize and give effect to every provision in the agreement. *See Universal C.I.T. Credit Corp. v. Daniel*, 243 S.W.2d 154, 158 (Tex. 1951).

It would be difficult to draft an employment contract that referenced an employee's benefits—whether conditional or not—without those benefits being implicitly or explicitly "related to" his or her employment. That said, in this case, when we consider the Agreement in its entirety, it clearly shows that LaCore offered Sloggett a position with SSBio, which included the equity stake in dispute, an annual salary, and certain other benefits, including access to health insurance after being employed for ninety days and access to 401K after being employed for six months. The Agreement was very specific in that it did not offer Sloggett health benefits or a 401K immediately on accepting LaCore's offer and beginning work. Instead, LaCore specifically offered Sloggett access to those things after stated time periods. The same cannot be said of LaCore's offer of the 1.5% equity stake in SSBio. The Agreement merely required Sloggett to begin work, which he did. To accept LaCore's version of the Agreement would require the terms of the Agreement to be rewritten simply because LaCore now dislikes those terms. We decline to do so.

LaCore claims that, under the contract, the equity stake was lost when Sloggett's at-will employment was terminated. Since at-will employment may be terminated at any time, any benefit that is contingent on continued employment is ephemeral. Of course, salary is paid as the

10

employment continues and ceases as the employment ceases. The question concerns the equity stake. Our obligation, in interpreting a contract, is to give effect to the intent of the parties as expressed in the contract so that all provisions actually mean something. *See Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006). Therefore, we conclude that the proper contract interpretation is to favor a non-ephemeral interpretation of the equity-stake provision, that is, that the equity stake is not lost when employment is terminated.

Consequently, it was error to find as a matter of law that Sloggett's 1.5% equity stake in SSBio was conditioned on his continued employment and that LaCore did not breach the Agreement. We sustain this issue.

*(2)* *Fact Questions Exist Regarding Sloggett's Damages Resulting from LaCore's Denial of the Equity-Stake Claim*, *Post Termination*

LaCore also maintains that, even if it had breached the parties' agreement, Sloggett could not prove the damage element of his contract claim. Noting that the Agreement amounted to an at-will employment contract,[12] LaCore argues that nothing in the Agreement required the company to continue paying Sloggett's salary or to provide him with benefits after his employment was terminated. Consequently, Sloggett could not establish that he incurred damages as a result of the loss of his salary or his benefits. While we agree as it relates to the post-termination portion of Sloggett's annual salary, LaCore's argument incorrectly presupposes

---

[12]Employment in Texas "is presumed to be at-will." *Midland Jud. Dist. Cmty. Supervision & Corrs. Dep't v. Jones*, 92 S.W.3d 486, 487 (Tex. 2002) (per curiam) (citing *Montgomery Cty. Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex. 1998)). "[An] employer must unequivocally indicate a definite intent to be bound not to terminate the employee except under clearly specified circumstances." *Montgomery Cty. Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex. 1998). Sloggett did not contest LaCore's representation that the Agreement amounted to anything other than an at-will employment contract.

11

that Sloggett did not have a viable claim for breach of contract relating to his 1.5% equity stake in SSBio.

That said, LaCore argued, and the summary judgment evidence showed, that the shares in SSBio were issued *after* Sloggett's employment was terminated. Therefore, LaCore maintains, SSBio was worthless and would justify no damages. That does not necessarily follow. LaCore does not direct us to any authority, nor can we find any, that stands for the proposition that, before formal entity formation and the issuance of shares, a business has no equity value. Further, Sloggett did not negotiate for shares of the company's stock; he negotiated for an equity stake in the company, whatever that might be. The Agreement stated that the newly formed company's "current expected value" was $100,000,000.00. As pointed out by Sloggett, a jury might determine that a 1.5% equity stake of the company amounted to $1,500,000.00. On the other hand, the jury could decide that the company had very little, if any, value. Whether SSBio was worth nothing at all, as LaCore maintains, or was worth many millions of dollars, as Sloggett maintains, is a fact question properly left to the jury.

Accordingly, it was error to conclude that, as a matter of law, Sloggett did not incur damages from LaCore's refusal to provide Sloggett the equity stake. We sustain this issue.

*(3)*    *The Economic-Loss Rule Does Not Foreclose Sloggett's Fraudulent-Inducement Claim*

Sloggett also included a claim against LaCore for fraud; yet, Sloggett's allegations are more closely aligned with a claim for fraudulent inducement.

> Texas law has long imposed a duty to abstain from inducing another to enter into a contract through the use of fraudulent misrepresentations. Fraudulent inducement is a species of common-law fraud that shares the same basic elements: (1) a material misrepresentation, (2) made with knowledge of its falsity

12

or asserted without knowledge of its truth, (3) made with the intention that it should be acted on by the other party, (4) which the other party relied on[,] and (5) which caused injury. Fraudulent inducement is actionable when the misrepresentation is a false promise of future performance made with a present intent to perform. Because fraudulent inducement arises only in the context of a contract, the existence of a contract is an essential part of the proof.

*Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018) (footnotes omitted) (citations omitted).

In his petition, Sloggett alleged that Lacore made material misrepresentations and misleading statements to him, including a promise to partner with him, and that, in return, "Sloggett would receive an ownership stake in the company worth millions of dollars . . . ." According to Sloggett, LaCore's representations were false, and LaCore knew at the time the representations were made that it never intended to live up to them. In response, LaCore filed a motion for summary judgment arguing that, based on the economic-loss rule, LaCore was prevented from proceeding with his claim. We disagree.

"The economic loss rule generally precludes recovery in tort for economic losses resulting from a party's failure to perform under a contract when the harm consists only of the economic loss of a contractual expectancy." *Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014) (per curiam) (citing *LAN/STV v. Martin K. Eby Constr. Co.*, 435 S.W.3d 234, 243 (Tex. 2014)). "But it does not bar all tort claims arising out of a contractual setting." *Id.* "In determining whether the plaintiff may recover on a tort theory, it is . . . instructive to examine the nature of the plaintiff's loss. When the only loss or damage is to the subject matter of the contract, the plaintiff's action is ordinarily on the contract." *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991) (emphasis added). "The nature of the

13

injury most often determines which duty or duties are breached." *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986).

While Sloggett, in his lawsuit, did claim a breach of contract, the suit also included an allegation of a promise intended to get Sloggett to enter that contract, with an allegation that the promise was not true when it was made. An action in tort lies for fraudulent misrepresentation when the facts establish that the promissor made a promise with no intent to perform, regardless of whether the promise is later subsumed within a contract. *Formosa Plastics Corp. v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 46–47 (Tex. 1998).

Therefore, the economic-loss rule does not, as a matter of law, foreclose Sloggett's fraudulent-inducement claim.

*(4)     Fact Questions Exist Regarding Whether LaCore Intended to Perform When It Contracted with Sloggett*

The question on the fraudulent-inducement claim, however, is whether fact issues exist as to that cause of action. We conclude that such fact issues do exist.

"A promise of future performance constitutes an actionable misrepresentation if the promise was made with no intention of performing at the time it was made." *Yeldell v. Goren*, 80 S.W.3d 634, 637 (Tex. App.—Dallas 2002, no pet.) (citing *Formosa*, 960 S.W.2d at 48). Yet, "[f]ailure to perform, standing alone, is no evidence of the promissor's intent not to perform when the promise was made." *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 435 (Tex. 1986). Accordingly, in this case, Sloggett must do more than prove that LaCore did not tender the 1.5% equity stake in SSBio. He must also present evidence that LaCore made

14

representations with the intent to deceive and that it had no intention of performing in the manner it represented. *See Formosa*, 960 S.W.2d at 48.

We measure a party's intent regarding performing the promise to act in the future at the point the party made such a promise. *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 775 (Tex. 2009) (per curiam). "Proving that a party had no intention of performing at the time a contract was made is not easy, as intent to defraud is not usually susceptible to direct proof." *Id.* at 774–75 (quoting *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 305 (Tex. 2006)). However, a party's prior intent not to perform at the time of the promise may be proven through evidence of the party's subsequent acts after the representation was made. *Id.* Moreover, a "breach combined with 'slight circumstantial evidence' of fraud is enough to support a verdict for fraudulent inducement." *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 305 (Tex. 2006) (citing *Spolijaric*, 708 S.W.2d at 435). "Intent is a fact question uniquely within the realm of the trier of fact because it so depends upon the credibility of the witnesses and the weight to be given their testimony." *Yeldell*, 80 S.W.3d at 637.

Here, the summary judgment evidence shows that LaCore, through Terry and Grace, hired Sloggett for the purpose of creating the SSBio business and making it a successful company. In return, LaCore promised Sloggett that he would receive a 1.5% equity stake in what LaCore represented would be an extremely valuable company. Not long after Sloggett began work, SSBio—through Terry and Grace and without Sloggett's knowledge—prepared documentation stating,

> The corporation shall be entitled to treat the holder of record of any share or shares of stock as the holder in fact thereof and, *accordingly shall not be bound to*

15

*recognize any equitable or other claim to or interest in such share on the part of any other person*, whether or not it shall have express or other notice thereof, except as otherwise provided by law.

(Emphasis added). Shortly thereafter, SSBio terminated Sloggett's employment without tendering the 1.5% equity in SSBio. In a matter of weeks, Terry and Grace resolved to accept Terry's offer to purchase 100% of the shares of SSBio, effectively leaving Sloggett with no available shares. The creation and inclusion of the provision stating that SSBio would not be bound to recognize any person's equitable claim against the company, in conjunction with the transfer of 100% of SSBio's shares to Terry, may be at least some evidence of an intent not to perform at the time the contract was offered to Sloggett. *See Chapa*, 212 S.W.3d at 305 (citing *Spolijaric*, 708 S.W.2d at 435). The jury should have the opportunity to make that factual determination.

Because Sloggett's fraudulent-inducement claim survives the economic-loss rule and material fact issues exist on that fraudulent-inducement claim, the summary judgment in favor of LaCore, as to Sloggett's claim of fraudulent inducement, was error. We sustain this issue.

*(5)*    *Sloggett's Complaint that LaCore Breached a Fiduciary Duty to Him Has Been Forfeited on Appeal for Failure to Present an Appellate Argument on that Issue*

On appeal, Sloggett did not present any argument that the trial court erred in granting summary judgment in favor of LaCore on his claim for breach of fiduciary duty.

> The right to appellate review in Texas extends only to complaints made in accordance with our rules of appellate procedure, which require an appellant to clearly articulate the issues we will be asked to decide, to make cogent and specific arguments in support of its position, to cite authorities, and to specify the pages in the record where each alleged error can be found. TEX. R. APP. P. 38.1; *Lee v. Abbott*, No. 05-18-01185-CV, 2019 WL 1970521, at *1 (Tex. App.—Dallas May 3, 2019, no pet.) (mem. op.); *Bolling* [*v. Farmers Branch Indep. Sch.*

16

*Dist.*, 315 S.W.3d 893, 895 (Tex. App.—Dallas 2010, no pet.)] (rules require appellants to "state concisely the complaint they may have, provide understandable, succinct and clear argument for why their complaint has merit in fact and in law, and cite and apply law that is applicable to the complaint being made along with record references that are appropriate").

*Amrhein v. Bollinger*, 593 S.W.3d 398, 401 (Tex. App.—Dallas 2019, no pet.). Therefore, nothing is presented to us for review on the claim of breach of fiduciary duty. *See id.* at 402. We overrule this issue.

*Conclusion*

We reverse the trial court's summary judgment in favor of LaCore on Sloggett's breach of contract and fraudulent-inducement claims. We affirm the trial court's judgment on Sloggett's claim for breach of fiduciary duty. We remand this case to the trial court for trial or other appropriate proceedings consistent with this opinion.

Josh R. Morriss III
Chief Justice

Date Submitted: August 25, 2021
Date Decided: December 1, 2021