Affirmed and Opinion filed March 8, 2007








Affirmed and Opinion filed March 8, 2007.

 

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-05-01285-CV

_______________

 

SID WEINBERGER, Appellant

 

V.

 

LARRY G. LONGER, Appellee

                                                                                                                                               


On Appeal from the County Court at Law
No. 1

Galveston County, Texas

Trial Court Cause No. 50,764

                                                                                                                                               


 

O P I N I O N

Appellant,
Sid Weinberger, appeals a judgment in favor of appellee, Larry  Longer, on
Longer=s fraud claim arising out of a
construction contract.  In five issues, Weinberger contends (1) the trial court
lacked subject matter jurisdiction over Longer=s claim, (2) the evidence is legally
and factually insufficient to support the jury=s findings on fraud and resulting
damages, (3) the trial court erred by awarding attorney=s fees, (4) the trial court erred by
awarding exemplary damages, and (5) the trial court erred by granting Adeath penalty@ sanctions against Weinberger.  We
affirm.








I.  Background

Pursuant
to an oral contract, Weinberger agreed to remodel Longer=s vacation home.  In return, Longer
agreed to pay for all labor and materials plus pay Weinberger a $20,000 fee
upon completion.  As the project progressed, Longer reimbursed Weinberger for
labor and materials purportedly used on his home.  Longer also purchased some
materials directly.

After
the project was completed, Weinberger sued Longer, alleging he did not pay some
costs for labor and materials and the $20,000 fee.  Longer filed a counterclaim,
alleging breach of contract, DTPA violations, fraud, quantum meruit, and
conversion.  In essence, Longer alleged that Weinberger failed to perform the
contract as promised, charged Longer for labor and materials used on Weinberger=s other construction projects, and
stole materials and furniture from Longer.

Before
trial, the court assessed sanctions against Weinberger based on his failure to
comply with two previous orders compelling discovery responses.  The trial
court dismissed Weinberger=s claim with prejudice, struck Weinberger=s answer to Longer=s counterclaim, and precluded
Weinberger from rebutting the counterclaim.  Therefore, trial was held on
Longer=s counterclaim only.[1]

The jury
found in Longer=s favor on all claims submitted in the charge: breach of
contract, DTPA violations, and fraud.  Longer elected recovery on the fraud
claim.  In accordance with the verdict, the trial court entered judgment
awarding Longer $86,000 in actual damages, $172,000 in exemplary damages,
$15,000 in attorney=s fees, costs, and interest.

 

 








II.  Jurisdiction Over Longer=s Counterclaim    

In his
first issue, Weinberger contends the trial court lacked subject matter
jurisdiction over Longer=s counterclaim because the amount in controversy exceeded the
maximum jurisdictional limit of a Galveston County Court at Law.  A
counterclaim, whether permissive or compulsory, must be within the trial court=s jurisdiction.  Smith v. Clary
Corp., 917 S.W.2d 796, 798 (Tex. 1996).  A counterclaim is not within the
trial court=s jurisdiction when the amount in controversy exceeds the maximum
jurisdictional limit of the court.  Id.

A
statutory civil county court generally has jurisdiction when the amount in
controversy exceeds $500 but does not exceed $100,000, excluding interest,
statutory or punitive damages and penalties, and attorney=s fees and costs, as alleged on the
face of the petition.  Tex. Gov=t Code Ann. ' 25.0003(c) (Vernon Supp. 2006).  Weinberger asserts that the
amount in controversy with respect to Longer=s counterclaim exceeded $100,000.

However,
Government Code section 25.0862 contains additional jurisdictional rules
exclusive to a Galveston County Court at Law and provides in pertinent part: 

 (a) In
addition to the jurisdiction provided by Section 25.0003 and other law, and
except as limited by Subsection (b), a statutory county court in Galveston
County has:

(1) the jurisdiction provided by the
constitution and by general law for district courts;








Tex.
Gov=t Code Ann. ' 25.0862(a) (Vernon Supp. 2006).  Thus, section 25.0862
expands the jurisdiction of a Galveston County Court at Law to that of a
district court, subject to certain exceptions which are inapplicable to this
case.  See id.; Tex. Gov=t Code Ann. ' 25.0862(b) (Vernon Supp. 2006).  A district court has
jurisdiction even when the amount in controversy exceeds $100,000.  See Tex. Gov=t Code Ann. ' 24.007 (Vernon 2004) (stating that
district court has the jurisdiction provided by Article V, Section 8, of the
Texas Constitution); Tex. Const.
art. V, ' 8 (providing that district court has
Aexclusive, appellate, and original
jurisdiction of all actions, proceedings, and remedies, except in cases where
exclusive, appellate, or original jurisdiction may be conferred by this
Constitution or other law on some other court, tribunal, or administrative
body.@).

Weinberger
contends section 25.0862 gives a Galveston County Court at Law the jurisdiction
of a district court in matters involving the same subject matter, but the
amount in controversy must still satisfy the monetary jurisdictional limits
prescribed for county courts at law in general.  We disagree.  Under the plain
language of section 25.0862, subject to certain exceptions, a Galveston County
Court at Law has the same jurisdiction as a district court irrespective of the
amount in controversy.  See Tex.
Gov=t Code Ann. ' 25.0862(a),(b).  In fact, the Texas
Supreme Court recently noted that section 25.0862 is an exception to the
general rule that county courts at law lack jurisdiction when the amount in
controversy exceeds $100,000.  See United Servs. Auto. Ass=n v. Brite, ___ S.W.3d ___, 2007 WL 283826, *1 
n.1 (Tex. Feb. 2, 2007).[2]  Accordingly
the trial court had jurisdiction over Longer=s counterclaim.  We overrule
Weinberger=s first issue.

III.  Sufficiency of the Evidence








In his
second issue, Weinberger argues the evidence is legally and factually
insufficient to support the jury=s findings of liability and damages
for fraud.  When reviewing the legal sufficiency of the evidence, we review the
evidence in the light most favorable to the challenged finding and indulge
every reasonable inference that would support it.  City of Keller v. Wilson,
168 S.W.3d 802, 822 (Tex. 2005).  We credit favorable evidence if reasonable
jurors could and disregard contrary evidence unless reasonable jurors could
not.  Id. at 827.  The evidence is legally sufficient if it would enable
reasonable and fair‑minded people to reach the verdict under review.  Id. 
In conducting a factual sufficiency review, we must examine the entire record,
considering both the evidence in favor of, and contrary to, the challenged
finding, and set aside the finding only if it is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust.  Cain
v. Bain, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam).

A.        Jury=s Finding On Fraud

 In
response to question number 9, the jury found that Weinberger committed fraud
against Longer.  The jury was instructed as follows regarding the elements of
fraud:

Fraud
occurs when:

a)         A party makes a material misrepresentation;

b)         The misrepresentation is made with the knowledge of its
falsity or made recklessly without any knowledge of the truth and as a positive
assurance;

c)         The misrepresentation is made with the intention that it
should be acted on by the other party; and

d)         The other party relies on the misrepresentation and thereby
suffers injury.

Misrepresentation
means: 

a)         A false statement of fact; or 

b)         A promise of future performance made with an intent, at the
time the promise was made, not to perform as promised.

            Fraud also occurs when:

a)         A party fails to disclose a material fact within the
knowledge of that party; 








b)         The party knows that the other party is ignorant of the fact
and does not have an equal opportunity to discover the truth;

c)         The party intends to induce the other party to take some
action by failing to disclose the fact; and

d)         The other party suffers
injury as a result of activity without knowledge of the undisclosed fact.

Weinberger
contends there is no evidence he made a misrepresentation or failed to disclose
a material fact as required by the jury charge.  Longer suggests, and the jury
apparently found, that Weinberger made misrepresentations and/or failed to
disclose material facts in essentially two respects: (1) by promising to
perform the contract when he intended, at the time the promise was made, not to
perform as promised; and (2) by charging Longer for materials and labor used on
Weinberger=s other projects.[3]








Weinberger
primarily challenges the finding as to this first aspect of fraud.  The
definition of misrepresentation submitted to the jury was consistent with the
rule that a promise to do an act in the future constitutes fraud when made with
no intention of performing the act.  See Spoljaric v. Percival Tours, Inc.,
708 S.W.2d 432, 434 (Tex. 1986); IKON Office Solutions, Inc. v. Eifert,
125 S.W.3d 113, 124 (Tex. App.CHouston [14th Dist.] 2003, pet. denied).  Weinberger argues
his alleged failure to perform the contract constitutes, at most, a breach of
contract, not fraud, because there was no evidence of his Aintent, at the time the promise was
made, not to perform as promised.@  Failure to perform a contract,
without more, is not evidence that the promisor did not intend to perform when
the promise was made, but it is a circumstance to be considered with other
facts when attempting to determine intent.  Spoljaric, 708 S.W.2d at
435; Eifert, 125 S.W.3d at 124.  While a party=s intent is determined at the time he
made the representation, intent may be inferred from his subsequent acts after
the representation was made.  Spoljaric, 708 S.W.2d at 434;  Eifert,
125 S.W.3d at 124.  Because intent to defraud is generally not susceptible to
direct proof, it invariably must be proven by circumstantial evidence.  Spoljaric,
708 S.W.2d at 435; see Eifert, 125 S.W.3d at 124.  ASlight circumstantial evidence@ of fraud, when considered with the
breach of promise to perform, is sufficient to support a finding of fraudulent
intent.  Spoljaric, 708 S.W.2d at 435.    

Longer
presented evidence to support both aspects of fraud cited above; however, the
evidence overlaps somewhat.  In particular, proof that Weinberger breached the
contract was insufficient, without more, to demonstrate his intent not to
perform.  However, evidence that Weinberger charged Longer for materials and
labor used on other projects was sufficient, without more, to show fraud
and constitutes Aslight circumstantial evidence@ of Weinberger=s fraudulent intent not to perform
the contract.

1.         Failure to Perform the
Contract








Longer
introduced ample evidence that Weinberger failed to perform the contract as
promised.  Longer testified that Weinberger represented he would remodel the
home and oversee all the work and Longer would Ahave a nice house@ and Alove the house@ when Weinberger was finished. 
However, at trial, Longer and his expert witness described extensive defects
throughout the home in the work supervised by Weinberger.[4] 
In at least one instance, Weinberger instructed employees to perform work in a
substandard manner.[5]  In some
instances, Weinberger used untrained workers to install particular products.[6] 
Longer made numerous complaints, but Weinberger never remedied the defects. 

According
to Longer, Weinberger not only performed defective work, but he then failed to
complete the project.  Specifically, the work overseen by Weinberger was
performed from October 2002 to mid-December 2002.  Then, no work was performed
from mid-December 2002 to mid-January 2003, except some electrical installation
supervised by Longer.  Around mid-January 2003, when the project should have
been finished, Longer began seeing Aless and less@ of Weinberger because he was
preparing to work on another job.  Thus, Longer had to assume supervision of
the project.  By the end of March 2003, Weinberger had Aabandoned@ the project, and Longer initiated
steps to ensure completion.  Longer estimated that Weinberger oversaw only
about half of the project.

2.         Charges for Other Projects 








Longer
also presented ample evidence that Weinberger charged him for materials and
labor used on other projects.[7]  Several
months after Longer=s project was completed, at Longer=s request, Weinberger provided an Aaccounting,@ itemizing labor and material costs
for Longer=s home.  According to Longer, the accounting, which was introduced at
trial, was Aextremely@ unusual.  The title, AAccount Transactions [Longer=s Address],@ indicated that all the entries
applied to Longer=s home.  However, the accounting included entries that
applied to other projects.  In fact, Weinberger redacted some entries,
acknowledging they applied to other projects, and then calculated the balance
allegedly owed by Longer.  Thus, the jury could have reasonably inferred that
Weinberger charged these entries to Longer=s home before being forced to produce
the accounting and acknowledge they did not apply.

Longer
testified that some additional entries, which had not been marked out by
Weinberger, also applied to other projects.  Longer introduced some of
Weinberger=s checks to various vendors and workers for costs attributed to Longer=s home on the accounting.  However,
addresses for other projects are noted on some of the checks.  Further, one
check reflected lumber purchases, but Longer directly purchased all the lumber
for his home.

Moreover,
on the accounting, Weinberger had listed weekly payments to his employees who
purportedly worked on Longer=s home.  Weinberger had indicated through these payments that
five to eleven employees per week worked on Longer=s home from October 2002 to
mid-December 2002, and some employees worked there full-time during each week.[8] 
Longer testified that this representation was inaccurate because there were
days during some of these weeks when they were Arained out.@  For instance, based on his hourly
rate, the accounting shows that Melvin Paz worked on Longer=s home about forty to fifty-five
hours every week from October 2002 to December 2002, except one when he worked
about thirty-three hours.  However, Paz testified he did not work there
everyday during this period because Weinberger sent him and five other
employees, whose payments were listed on the accounting, to also work on three
other projects.








Paz
further explained that Weinberger used lumber removed from Longer=s home on his other projects, and the
employees removed nails from the lumber while it was still at Longer=s  home.  Thus, Paz=s testimony indicated that some of
the employees= time charged to Longer=s home was actually spent recycling lumber for other
projects.  The accounting also reflected that four employees worked on the home
during a week in January 2003, when, according to Longer, no work was
performed.

Finally,
Paz testified that, pursuant to Weinberger=s orders, employees took lumber
delivered to Longer=s home and used it on Weinberger=s other projects.  Weinberger
concealed these actions by instructing the employees to place old lumber on top
of the new lumber when hauling it away.  Paz also confirmed that Weinberger
stole a wrought iron table and four chairs from Longer and gave them to a
worker.  These actions constitute further circumstantial evidence of fraudulent
intent.[9]

As the
project progressed, Longer made various payments to Weinberger.  Longer
testified that after he reviewed the accounting, he determined that his total
payments exceeded the costs properly attributed to his home.  Therefore, the
jury could have reasonably concluded that Weinberger failed to disclose
material facts by charging Longer for unrelated labor and materials, which were
unknown to Longer until he received the accounting.  Moreover, considering all
the above evidence, the jury could have reasonably concluded that, at the time
he made the contract, Weinberger did not intend to perform as promised;
instead, he intended to halfheartedly perform the contract while  fraudulently
obtaining payments and materials from Longer.  Accordingly, we conclude the
evidence is legally and factually sufficient to support the jury=s finding that Weinberger committed
fraud.

B.        Jury=s Finding on Damages

In
response to question number 10, the jury found that Longer incurred two types
of damages proximately caused by Weinberger=s fraud:








What sum of money, if any, if paid now in cash, would fairly and
reasonably compensate [Longer] for his damages, if any that were proximately
caused by such fraud?

AProximate cause@ means that cause which, in a natural and continuous
sequence, produces an event, and without which cause such event would not have
occurred.  In order to be a proximate cause, the act or omission complained of
must be such that a person using ordinary care would have foreseen that event
or some similar event might reasonably result there from.  There may be more
than one proximate cause of an event.

 

a)  Loss of benefit of the bargain                 Answer: 
   [$36,000]   

The difference between what [Longer] paid to [Weinberger] and the
amount of the value of the materials and labor actually paid for and overseen
by [Weinberger].

b)  Remedial Damages                                  Answer: 
   [$50,000]   

The reasonable and necessary costs for [Longer] to repair the materials
and labor provided, performed and overseen by [Weinberger].

 

Weinberger
contends the evidence is legally and factually insufficient to support the
above award for two reasons.  First, he argues that these damages, if any, were
proximately caused by his alleged breach of contract, not by fraud.  We
disagree.  The ALoss of benefit of the bargain@ damages apparently reflect Longer=s overpayments to Weinberger because of
his fraud in charging Longer for materials and labor used on other projects. 
In addition, the ARemedial Damages@ were not merely based on breach of
contract.  As we have discussed, Longer presented evidence that Weinberger
committed fraud because he intended not to perform when he made the contract. 
The jury could have reasonably concluded that Longer incurred, or will incur,
costs to repair defects because Weinberger did not intend to fully perform the
contract.








Next,
Weinberger argues there was no evidence to support the amount of damages
awarded by the jury because the amount was speculative.  Again, we disagree. 
We recognize, and Longer acknowledges, that exact damages were difficult to
determine because Weinberger resisted Longer=s informal requests for
substantiation of charges and failed to fully respond to formal discovery
requests.  Nevertheless, Longer presented sufficient evidence of his damages to
the extent possible, considering the paucity of information provided by
Weinberger.

With
respect to the $36,000 for ALoss of benefit of the bargain,@ Longer explained that he calculated
the amount he overpaid Weinberger for materials and labor.  He began with the
total of $191,019.45 reflected on Weinberger=s accounting and then subtracted the
following:  $115,546.21 which Weinberger acknowledged applied to other
projects; $16,836.83 representing additional charges for other projects and
unsubstantiated charges;[10] and
$20,260.72 in labor charges for rain-out days.[11] 
He arrived at a figure of $38,375.69 for costs properly attributed to his home.
He had already paid $78,261.37 to Weinberger.  Therefore, he overpaid
Weinberger by $39,885.68.  Based on his testimony, we conclude the evidence is
legally and factually sufficient to support the $36,000 in ALoss of benefit of the bargain@ damages.[12]








With
respect to the $50,000 in ARemedial Damages,@ Longer introduced the detailed
report of his expert describing the deficiencies, the recommended repairs, and
the estimated costs for the repairs.  In addition, the expert testified about
the repair costs consistent with his report.  The expert estimated the repairs
would cost $80,135, including $58,190 for the exterior, $6,295 for the
interior, and $15,650 for framing.  Because the jury awarded less than the amount
calculated by the expert, we conclude the evidence is legally and factually
sufficient to support ARemedial Damages@ awarded.  Accordingly, we overrule
Weinberger=s second issue.

IV.   Attorney=s Fees

In his
third issue, Weinberger argues that the trial court erred by awarding attorney=s fees because Longer elected recovery
solely on his fraud claim and attorney=s fees may not be awarded on a fraud
claim.  However, Weinberger fails to refer this court to any portion of the
record where he preserved error on this complaint.  To preserve error, a party
must have presented the complaint to the trial court by timely request,
objection or motion, sufficiently specific to make the trial court aware of the
complaint.  See Tex. R. App. P. 33.1(a)(1).









In
response to question number 8, the jury found that $15,000 was Aa reasonable fee for the necessary
services@ of Longer=s attorney.  Weinberger complained of
attorney=s fees  in his motion for judgment
notwithstanding the verdict (AJNOV@) and at the hearing on the motion.  In the motion, he
stated, AThe Court must disregard the findings
of the jury as to [Question 8] inasmuch as the foundation damages were not
properly determined by the jury.@  Although this contention is
unclear, we cannot interpret it as a complaint that Longer would be precluded
from an award of attorney=s fees if he recovered solely on the fraud claim.

At the
JNOV hearing, Weinberger somewhat clarified his contention.  He asserted that
the Acourt must disregard the findings of
the jury to [Question 8] inasmuch as the foundation damages were not properly
determined by the jury as previously argued.@  (emphasis added).  In his previous
argument, he challenged only the jury=s findings on breach of contract and
DTPA violations on the grounds that the questions were improper.[13] 
Thus, Weinberger apparently requested the trial court to disregard the attorney=s fees finding because the underlying
questions regarding breach of contract and DTPA damages were improper.  When he
subsequently addressed the fraud findings, he failed to argue that Longer was
not entitled to attorney=s fees if he elected recovery solely on the fraud claim or
otherwise mention attorney=s fees.

Therefore,
in his motion for JNOV and at the JNOV hearing, Weinberger did not sufficiently
apprise the trial court of the complaint that he now raises on appeal.  An
objection in the trial court that is not the same as the issue urged on appeal
presents nothing for review.  See Centurion Planning Corp. v. Seabrook
Venture II, 176 S.W.3d 498, 508 (Tex. App.CHouston [1st Dist.] 2004, no pet.);  Holland
v. Hayden, 901 S.W.2d 763, 765 (Tex. App.CHouston [14th Dist.] 1995, writ
denied).  Accordingly, Weinberger did not preserve his issue through his motion
for JNOV.  See Holland, 901 S.W.2d at 765 (holding party=s challenge in trial court to
sufficiency of evidence to support award of attorney=s fees did not preserve appellate
complaint regarding double award of attorney=s fees).








The day
after the hearing, the trial court overruled the motion and entered judgment.
Although Weinberger timely raised several objections to the judgment in a
motion for new trial and at a hearing on the motion, he presented no challenge
to the award of attorney=s fees.  Finally, he did not file any other post-judgment
motions relative to the relief awarded in the judgment, such as a motion to
modify.  Consequently, Weinberger waived his complaint by failing to raise an
objection in the trial court.  See Save Our Springs Alliance, Inc. v. Lazy
Nine Mun. Utility Dist., 198 S.W.3d 300, 317B18 (Tex. App.CTexarkana 2006, pet. denied) (holding
party waived one of two appellate grounds for challenging attorney=s fees by failing to raise it in the
trial court); City of Port Isabel v. Shiba, 976 S.W.2d 856, 860B61 (Tex. App.C Corpus Christi 1998, pet. denied)
(holding party waived complaint that trial court assessed attorney=s fees in absence of statutory
authority by failing to object in trial court).  We overrule his third issue.

V.   Exemplary Damages

In his
fourth issue, Weinberger contends the trial court erred by awarding exemplary
damages because Longer failed to prove a fraud claim and exemplary damages may
not be recovered on a breach of contract claim.  Because we have rejected
Weinberger=s challenge to sufficiency of the evidence supporting the fraud claim, we
also overrule this issue. 

VI.  ADeath Penalty@ Sanctions

In his
fifth issue, Weinberger argues the trial court erred by imposing Adeath penalty@ sanctions due to his failure to
comply with its orders compelling discovery.

A.        Failure to Comply with the
Trial Court=s Orders








Longer
initially served interrogatories and a first request for production, and
Weinberger served some responses.  Longer thereafter served a second and a
third request for production, but Weinberger failed to respond.  Longer filed a
motion to compel, asserting Weinberger=s responses to the interrogatories
and first request for production were inadequate and his responses to the
second and third requests for production were past due.  On August 25, 2004,
the trial court granted the motion and ordered Weinberger to supplement certain
responses to the interrogatories and first request for production, and respond
to the second and third requests for production, within ten days.  The trial
court also stated that it would consider a motion for sanctions if Weinberger
did not fully comply.  In spite of this order, Weinberger failed to comply.

Thereafter,
Longer filed a motion seeking sanctions, including an order striking Weinberger=s pleadings.  At a hearing on October
6, 2004, the trial court imposed sanctions by awarding Longer his attorney=s fees but did not strike Weinberger=s pleadings.[14] 
Instead, the trial court allowed Weinberger fifteen days to comply with its
previous order and stated that failure to comply would result in stricken
pleadings.

Again,
Weinberger failed to comply, and Longer requested sanctions.  On November 9,
2004, the trial court signed a sanctions order, dismissing Weinberger=s claim with prejudice, striking his
answer to Longer=s counterclaim, and precluding him from rebutting the
counterclaim.[15]  Four months
later, Weinberger filed a motion to reinstate, claiming he had since complied
with the discovery orders.  After conducting a hearing, on March 10, 2005, the
trial court denied the motion.[16]

 








B.        The Sanctions 

We
review a trial court=s decision to sanction a party under an abuse of discretion
standard.  Cire v. Cummings, 134 S.W.3d 835, 838 (Tex. 2004).  A trial
court abuses its discretion when its ruling is arbitrary and unreasonable
without reference to any guiding rules and principles.  Id. at 838B39.  Texas Rule of Civil Procedure
215.2 allows a trial court to enter Ajust@ sanctions for a party=s failure to comply with a discovery
order or request, including the following types of sanctions, as entered in
this case:  Aan order refusing to allow the disobedient party to support or oppose
designated claims or defenses@; and Aan order striking out pleadings or parts thereof . . . or
dismissing with or without prejudice the action or proceedings or any part
thereof.@  Tex.
R. Civ. P. 215.2(b)(4), (5).

There
are two components to measuring whether sanctions are just: (1) a direct
relationship must exist between the offensive conduct and the sanctions
imposed; i.e., just sanctions must be directed against the abuse and toward
remedying the prejudice caused the innocent party; and (2) the sanctions must
not be excessive; i.e., A[t]he punishment should fit the crime . . . courts must consider
the availability of less stringent sanctions and whether such lesser sanctions
would fully promote compliance.@  Cire, 134 S.W.3d at 839 (citing TransAmerican
Natural Gas Corp. v. Powell, 811 S.W.2d 913, 917 (Tex. 1991)) (emphasis in
original).

Discovery
sanctions cannot be used to adjudicate the merits of a party=s claims or defenses unless a party=s hindrance of the discovery process
justifies a presumption that its claims or defenses lack merit.  Id. (citing
TransAmerican Natural Gas Corp., 811 S.W.2d at 918).  However, if a
party refuses to produce material evidence, despite the imposition of lesser
sanctions, the court may presume that an asserted claim or defense lacks merit
and dispose of it.  Id. (citing TransAmerican Natural Gas Corp.,
811 S.W.2d at 918).








Here,
Weinberger suggests the sanctions were not Ajust@ because there was no direct
relationship between his offensive conduct and the sanctions and the trial
court did not first impose a lesser sanction.  We disagree.

            1.         Direct Relationship
Between Offensive Conduct and Sanctions

Weinberger
acknowledges he did not initially comply with the trial court=s discovery orders.  However, he
suggests that there was no direct relationship between his failure to comply
and the sanctions because he did not refuse to produce material evidence and
Longer was not prejudiced by his actions.  Weinberger apparently does not
dispute that, in most of the discovery requests at issue, Longer sought
information material to Weinberger=s claim against Longer and/or Longer=s counterclaim.[17] 
Rather, Weinberger suggests he did not refuse to produce material evidence
because he belatedly complied with the trial court=s discovery orders after sanctions
were entered.  Therefore, he apparently challenges the initial sanctions order
and the subsequent denial of his motion to reinstate, wherein the trial court
effectively reaffirmed its previous order.








However,
the record does not confirm Weinberger=s contention that he belatedly
complied with the discovery orders.  To support his contention, Weinberger
refers this court  to his motion to reinstate and a record of the hearing on
that motion.  In the motion, he made an unsupported assertion that he Ahas since provided the requested
discovery and it has proven to be immaterial to [Longer].@  At the hearing, the parties
introduced discovery responses that Weinberger filed within several days before
the hearing.  These responses indicate he did not sufficiently answer or
produce documents as previously ordered by the trial court.

For
instance, in his supplemental answers to some interrogatories seeking material
information, he merely referred to other answers and/or documents although the
trial court had ordered him to provide detailed answers and not just refer to
other answers and/or documents.[18]  In
addition, Weinberger did not demonstrate at the hearing that he had filed
supplemental responses to the first request for production although the trial
court had ordered him to do so.  Weinberger did file belated responses to the
second and third requests for production.  He attached some documents, including
checks, his accounting of purported costs for the project, and tax returns, and
stated that other documents were available for inspection.  Longer acknowledges
that Weinberger made four boxes of documents available for inspection. 
However, Longer asserts that Weinberger=s belated responses were not remotely
in compliance with the trial court=s order.

We
recognize it may have been onerous for Weinberger to introduce four boxes of
documents at the hearing.  Regardless, without his introducing an affidavit,
summary, or some type of evidence identifying the documents he produced, we
cannot determine whether he complied with the trial court=s previous order.  Therefore, as far
as this record shows, the trial court did not abuse its discretion by
determining that Weinberger failed to produce evidence material to his claim
and Longer=s counterclaim when it denied the motion to reinstate.








Finally,
Weinberger suggests that any lack of compliance with the trial court=s discovery orders caused Longer no
prejudice because he was prepared for trial. To the contrary, most of the
Longer=s evidence at trial consisted of his
own witnesses and evidence, except for Weinberger=s accounting and associated checks. 
Weinberger did not produce some of the detailed information requested by Longer
regarding the work performed on his home and the charges to his account.  As we
have discussed, Longer had some difficulty proving precise damages due to
Weinberger=s failure to produce material information.  Moreover, Longer=s ability to prove his own
counterclaim despite Weinberger=s failure to produce material information, does not negate
any prejudice Longer would have incurred if he had been forced to defend
against Weinberger=s claim or address Weinberger=s defenses to his counterclaim in the
absence of complete and meaningful discovery.

2.         Imposition of Lesser
Sanction

Weinberger
also contends the trial court did not first assess a lesser sanction to
encourage compliance.  To the contrary, before entering the sanctions at issue,
the trial court twice ordered Weinberger to supplement and/or respond to
discovery requests.  In the second order, the trial court awarded attorney=s fees to Longer and explicitly
warned Weinberger that failure to comply with its previous discovery order by a
date certain would result in the very sanctions eventually imposed.  Despite
this warning, Weinberger ignored the trial court=s orders.  Thus, the trial court
actually first entered less stringent standards by awarding attorney=s fees, but the lesser sanctions
still failed to promote compliance.








In sum,
because Weinberger refused to produce evidence material to his claim and Longer=s counterclaim, despite the
imposition of lesser sanctions, the trial court was entitled to presume that
Weinberger=s claim and his defenses to Longer=s counterclaim lacked merit. We
conclude the sanctions were Ajust,@ and the trial court did not abuse its discretion.  See
Davenport v. Scheble, 201 S.W.3d 188, 193B94 (Tex. App.CDallas 2006, no pet. h.) (finding no
abuse of discretion in trial court=s entry of default judgment for
plaintiff based on defendant=s failure to fully respond to discovery requests, considering
the trial court previously imposed lesser sanctions by granting plaintiff=s motion to compel and requiring
defendant to pay plaintiff=s attorney=s fees); Hernandez v. Mid‑Loop, Inc., 170 S.W.3d
138, 144 (Tex. App.CSan Antonio 2005, no pet.) (finding no abuse of discretion in
trial court=s dismissing plaintiff=s suit based on his failure to cooperate in his deposition
and produce crucial information even after entry of lesser sanctions).  We
overrule Weinberger=s fifth issue.

Accordingly,
the judgment of the trial court is affirmed.

 

 

/s/        Charles W. Seymore

Justice

 

 

 

Judgment rendered and Opinion filed
March 8, 2007.

Panel consists of Justices Hudson,
Fowler and Seymore.









[1]  Although the trial court struck Weinberger=s pleadings and precluded him from rebutting Longer=s counterclaim, the trial court required Longer to
prove liability and damages on the counterclaim. 





[2]  In comparison, Weinberger cites the following
provision governing Dallas County Courts at Law: AIn addition to the jurisdiction provided by Section 25.0003 and other
law, a county court at law in Dallas County has concurrent jurisdiction with
the district court in civil cases regardless of the amount in controversy.@  See Tex.
Gov=t Code Ann. ' 25.0592(a) (Vernon 2004) (emphasis added). 
Weinberger contends the Legislature intended to impose a monetary
jurisdictional limit on a Galveston County Court at Law because it did not
include the following phrase in section 25.0862: Aregardless of the amount in controversy.@  However, the Government Code contains numerous jurisdictional
provisions exclusive to various county courts at law.  See Tex. Gov=t Code Ann. '' 25.0041B25.2512 (Vernon 2004 and Supp. 2006).  For example,
the Bowie County Court at Law has Athe
jurisdiction provided by the constitution and general law for district courts,@ but does not have jurisdiction of Acivil cases in which the matter in controversy exceeds
$100,000 . . .@  See Tex.
Gov=t Code Ann. '25.0212(a),(b)(5) (Vernon 2004).  If we were to
interpret section 25.0862 by comparing it to provisions governing other
counties, we would refer the reader to the above-quoted language which
distinguishes a Galveston County Court at Law from the Bowie County Court at
Law. 





[3]  We will later discuss the jury=s findings on damages in more detail; however, we note
that the findings on damages reflect the jury concluded Weinberger committed
fraud in both respects.





[4]  These defects included  faulty installation or other
defective workmanship with respect to the following: trim on staircases, the
front door, roof lines, walls, the concrete slab, plumbing, trim on the garage
doors, an exterior siding called AHardi-plank,@ a decking material called ATrex,@ ceiling
lighting on the porch, deck railing, sheetrock, crown molding, framing, and
pipes and wires near the exterior of the home.  In addition, Weinberger failed
to comply with certain government codes, impeding Longer=s ability to obtain occupancy and completion
certificates from the applicable authorities until the violations were
remedied.





[5]  Longer testified that Weinberger instructed
employees to build a wall onto the ground even after the employees informed him
the wall should be constructed onto a raised concrete slab.





[6]  The workers who installed Hardi-plank and Trex were
not experienced with these products, and they were installed so deficiently as
to void their warranties.





[7]  Weinberger barely addresses the finding that he
overcharged Longer, focusing instead on his argument there is no evidence of
intent not to perform the contract.  Regardless, we will discuss the evidence
of overcharges in some detail because it also constitutes circumstantial
evidence of intent not to perform.





[8]  The accounting lists the amounts paid to each
employee per week, not per day.  However, one employee testified that he was
paid $16 per hour; thus, the jury could have reasonably inferred that all
employees were paid a comparable rate.  Based on this rate, the paychecks
reflect that some employees worked full-time during each week.





[9]  We note that the value of stolen lumber did not
constitute part of the jury=s damages
calculations.  As we explain below, to calculate damages, the jury was
effectively asked about Longer=s overpayments
to Weinberger.  However, Longer had purchased the lumber directly. 
Nonetheless, the jury could have considered the stolen lumber as evidence of
fraudulent intent.





[10] Longer explained that the $16,836.83 consisted of
unsubstantiated charges and amounts for which corresponding checks showed a
different address.  On cross-examination, Longer outlined the items on the
accounting comprising the $16,836.83, but the items outlined in his
cross-examination are approximately $4,000 less than $16,836.83.  However, the
jury awarded approximately $4,000 less for ABenefit
of the bargain@ damages than the total amount calculated by Longer. 
Thus, the variance between $16,836.83 and Longer=s testimony is immaterial.  We note there is no direct evidence that
unsubstantiated charges on the accounting were necessarily incurred for other
projects.  However, based on the evidence establishing Longer=s assertion that some charges on his accounting
definitely pertained to other projects, the jury could have reasonably inferred
that Weinberger did not substantiate other charges because they also applied to
other projects.





[11]  Longer=s
testimony regarding labor charges for rain-out days was not detailed.  He
specified the exact days on which work was rained out.  However, Weinberger=s accounting itemized the total payments to employees
per week, not per day.  Nevertheless, Longer=s
calculation of overpayments for labor is sufficiently supported by determining
the percentage of time per week that work was rained out, then calculating the
corresponding percentage of total payments to employees for that week.  We
cannot conceive of any other or more precise method by which the jury could
have calculated overpayments for labor in light of the limited information
provided to Longer.





[12]  Longer=s
expert also calculated overpayments by determining the difference between the
total amount Longer expended on the project, including his payments to
Weinberger and his direct purchases, and value of the work actually
performed by Weinberger.  However, the jury was instructed to consider the
difference between the amount Longer paid to Weinberger and the amount
of materials and labor actually paid for and overseen by Weinberger. 
Therefore, the expert=s calculation, which included all amounts Longer
expended on the projectCnot just payments to Weinberger, did not necessarily
support the ABenefit of the bargain damages@ awarded by the jury.  Regardless, Longer=s damages calculation is sufficient to support the
jury=s award.





[13]  Weinberger challenged the findings on breach of
contract and resulting damages on the ground there was no finding as to the Anature@ of the
contract.  He challenged the finding on DPTA damages on the ground the question
did not limit the damages to those for which his conduct was a producing cause.





[14]   On October 18, 2004, the trial court signed an
order reflecting its oral ruling.





[15]  In this sanctions order, the trial court stated that
it had twice ordered Weinberger to supplement his interrogatory answers and
supplement and respond to Longer=s first
and second requests for production.  However, the trial court had also
previously ordered Weinberger to respond to the third request for
production.  It is unclear whether the failure to mention the third request for
production in the final sanctions order was an oversight or whether the trial
court found that the refusal to respond to the third request for production did
not justify sanctions.  However, in the third request for production, Longer
sought only Weinberger=s tax returns and associated documents for relevant
years.  In the interrogatories and first and second requests for production,
Longer sought information material to the merits of the claim and
counterclaim.  Even if the trial court based its sanctions order only on
Weinberger=s refusal to supplement and/or respond to the first
and second requests for production, as we will discuss, the trial court did not
abuse its discretion.  





[16]  Weinberger sought a writ of mandamus from the First
Court of Appeals, but his application was  denied.





[17]  To summarize, the requests at issue mostly sought
information and/or documents concerning the following:  the work and materials
each party agreed to provide and did provide; labor and materials provided by
Weinberger for which he was allegedly not reimbursed; individuals and companies
Weinberger retained to provide services; Weinberger=s payments for labor and materials; Longer=s payments; any alleged modification of the contract;
the factual basis for Weinberger=s
claim that Longer breached the contract, Weinberger did not breach the
contract, and Longer did not suffer any damages; permits and certificates
relating to the project; correspondence concerning the project; materials and
labor Weinberger used for other projects and payments for this labor and
materials; and workers used for other projects.





[18]  For example, Weinberger merely referred to other
answers and/or documents in his original and supplemental answers to
interrogatory numbers 3, 4, 6 and 8, which, in summary, asked him to do the
following:  identify all individuals and/or companies Weinberger  retained to
work on and/or provide services for the project; detail the respective work
each individual and/or company was to provide; detail all materials Weinberger
and Longer each acquired and provided for the project; detail the labor and/or
materials for which Weinberger had expended funds and had not been reimbursed
by Longer; and identify the specific work Weinberger and Longer each performed
and/or contracted to have performed.