COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
 2-06-308-CV

 

 

JEAN PIERRE                                                                      APPELLANT

 

                                                   V.

 

CAROL TILLEY, DESIGN WEST, INC.,                                      APPELLEES

D.R.
HORTON, INC. D/B/A D.R. HORTON 

CUSTOM
HOMES, AND 

D.R.
HORTON-TEXAS, LTD.

 

                                              ------------

 

         FROM
COUNTY COURT AT LAW NO. 1 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

Jean Pierre appeals from a
judgment on a jury verdict based on statutory and common law fraud in favor of
Carol Tilley and Design West, Inc. (ATilley@) and D. R.
Horton, Inc. d/b/a D. R. Horton Custom Homes and D. R. HortonCTexas, Ltd. (AHorton@).  We affirm.








 

                                            Background

Pierre owns a shopping center
in Dalworthington Gardens known as Campo Verde Square.  The property is managed by Scott Evans.  Horton is a homebuilder, and Tilley is an
interior decorator employed by Horton to furnish its model homes.  In August 2003, Tilley sought storage space
for furniture displayed in Horton=s model homes.  She saw a sign
advertising space at Campo Verde Square and set up a meeting to inspect it. 

Tilley and Jody Delgado, a
Horton marketing director who worked with Tilley, met with Pierre in early
August 2003 and inspected the storage space. Both Tilley and Delgado testified
that they saw a puddle of water on the floor and damaged and missing ceiling
tiles.  Weather records reported that Meacham
Airport, about twenty miles away, recorded .19 inches of rain the day before.
Pierre testified that there was no water on the floor at the time of the
meeting. 








Tilley told Pierre she needed
a space by August 19 to store upholstered furniture.  Tilley and Delgado testified that they told
Pierre that they would not rent the space unless the roof leaks were fixed and
Pierre provided documentation showing that repairs had been made.  They testified that Pierre assured them that
he would fix the leaks and provide a report on the condition of the roof.  Pierre testified that he told Tilley and
Delgado that the roof was watertight and that he did not say he would make
repairs to the roof.  But Evans, the
property manager, made a note after the meeting stating that Awe . . . need to fix a roof leak.@[2] 

On August 12, Delgado
sent Pierre a fax stating that Horton wanted to rent the space.  That same day, Pierre sent a proposed lease
to Delgado with a letter stating that he would not be able to make any repairs
until the lease was signed.  Delgado
initialed the lease, and Tilley signed it.

The lease=s term was twelve months.  It
recites August 12, 2003, as the date of execution, August 19 as the date of
commencement, and a monthly rental fee of $680. 
The lease contains Aas-is@ and Aentire agreement@ clauses. On
August 20, Evans delivered a key to the space to Delgado, and Delgado gave him
the executed lease. 

Sometime before August 19,
Pierre called Tilley and told her that he needed more time to ready the
space.  Tilley told him he could have one
more week.  








On August 25, Tilley called
Evans and stated she was unhappy with the condition of the space.  Evans testified that Tilley complained about
several issues such as the space=s cleanliness, a hole in the door, and some remaining stained ceiling
tiles but said nothing about the roof leaking. 
Tilley testified that she and Delgado decided they could not use Pierre=s space without some assurance that the roof did not leak.  She said that she could not give Pierre more
time to prepare the premises because she needed storage space immediately.  Later on August 25, she rented another
storage space from a different lessor for $700 per month. 

Pierre sued Appellees for
breach of contract.  Appellees asserted
common law and statutory fraud as affirmative defenses and counterclaims.  The case was tried to a jury.  For reasons not reflected in the record,
Pierre=s breach of contract claim was not submitted to the jury.  The jury found in Appellees= favor on their common law and statutory fraud counterclaims and
awarded them $240 in damages and $15,000 in attorney=s fees through trial plus additional attorney=s fees on appeal.  The trial
court signed a judgment that Pierre take nothing by his claims and that
Appellees recover the amounts awarded by the jury. 

                                             Discussion

A.               
Legal and
factual sufficiency








Eighteen of Pierre=s
twenty-one issues challenge the legal and factual sufficiency of the evidence
to support the jury=s fraud
findings.  Specifically, Pierre argues
that the evidence is legally and factually insufficient to prove (1) that he
had no intention of having a roofer inspect the roof, (2) that he had no
intention of doing the work on the space that he agreed to do, (3) that the
roof was leaking in August 2003, or (4) that Appellees suffered $240 in
damages.

1.                 
Standards of
review








[JFM1] A legal
sufficiency challenge may only be sustained when:  (1) the record discloses a complete absence
of evidence of a vital fact; (2) the court is barred by rules of law or of
evidence from giving weight to the only evidence offered to prove a vital fact;
(3) the evidence offered to prove a vital fact is no more than a mere
scintilla; or (4) the evidence establishes conclusively the opposite of a vital
fact.  Uniroyal Goodrich Tire Co. v.
Martinez, 977 S.W.2d 328, 334 (Tex. 1998), cert. denied, 526 U.S.
1040 (1999); Robert W. Calvert, ANo Evidence@ and AInsufficient
Evidence@ Points of
Error, 38 TEX. L. REV. 361, 362-63 (1960).  In
determining whether there is legally sufficient evidence to support the finding
under review, we must consider evidence favorable to the finding if a
reasonable factfinder could, and disregard evidence contrary to the finding
unless a reasonable factfinder could not. 
City of Keller v. Wilson, 168 S.W.3d
802, 827
(Tex. 2005).  Anything more than a
scintilla of evidence is legally sufficient to support the finding.  Cont=l Coffee Prods.
Co. v. Cazarez, 937 S.W.2d 444, 450 (Tex. 1996); Leitch v. Hornsby,
935 S.W.2d 114, 118 (Tex. 1996).

[JFM2] An assertion that the evidence is factually insufficient to support a
fact finding means that the evidence supporting the finding is so weak or the
evidence to the contrary is so overwhelming that the answer should be set aside
and a new trial ordered.  Garza v.
Alviar, 395 S.W.2d 821, 823 (Tex. 1965). 
We are required to consider all of the evidence in the case in making
this determination, not just the evidence that supports the finding.  Mar. Overseas Corp. v. Ellis, 971 S.W.2d
402, 406-07 (Tex.), cert. denied, 525 U.S. 1017 (1998).

2.                 
Elements of
fraud








To establish common law fraud, a plaintiff must
prove (1) the defendant made a material representation; (2) the representation
was false; (3) when the defendant made the representation, the defendant knew
it was false or made it recklessly without any knowledge of the truth and as a
positive assertion; (4) the defendant made the representation with the
intention that it be acted upon by the other party; (5) the party acted in
reliance upon the representation; and (6) the party suffered injury.  Johnson & Higgins of Tex., Inc. v.
Kenneco Energy, Inc., 962 S.W.2d 507, 524 (Tex. 1998).  The elements of statutory fraud are the same
as common law fraud, except that in the case of statutory fraud, it is not
necessary to prove that the speaker acted with knowledge or recklessness. Brush
v. Reata Oil & Gas Corp., 984 S.W.2d 720, 726 (Tex. App.CWaco 1998, pet. denied); see Tex. Bus. & Com. Code Ann. ' 27.01 (Vernon 2002).  Intent is a fact question uniquely within the
realm of the trier of fact because it so depends upon the credibility of the
witnesses and the weight to be given to their testimony.  Spoljaric v. Percival Tours, Inc., 708
S.W.2d 432, 434 (Tex. 1986).  Since
intent to defraud is not susceptible of direct proof, it invariably must be
proven by circumstantial evidence.  Id.
at 435.

3.                 
Application








Considering the evidence favorable to the jury=s fraud findings and disregarding
evidence contrary to the findings that a reasonable factfinder could disregard,
we hold that there is legally sufficient evidence on each of the elements of
fraud to support the jury=s
verdict.  See City of Keller, 168
S.W.3d at 827.  Pierre testified that he
affirmatively told Tilley and Delgado that the water damage to the ceiling
tiles had occurred many months before, the roof had already been fixed, and the
space was watertight.  But Charles
Fryberger, the prior tenant, testified that he vacated the premises because the
roof had twenty-six leaks in February 2003, and Pierre admitted that he made no
repairs to the subject premises after Fryberger vacated.  Moreover, Evans, the property manager,
testified that the condition described by Tilley and DelgadoCa puddle of water on the floor below
stained ceiling tilesCwas
evidence of an ongoing leak in the space. 
Thus, there is some that evidence that Pierre represented that the roof
was watertight and some evidence that the roof was in fact leaking.

Tilley=s
and Delgado=s
testimony that they told Pierre they needed a dry space to store furniture is
circumstantial evidence from which the jury could infer that Pierre told them
the roof was watertight with the intent of inducing them to sign the
lease.  Tilley testified that she relied
on his representation.








With regard to damages, Tilley testified that
because she needed storage space immediately, she leased space at another
location for $20 per month more than the $680 per month Pierre charged for his
space.  Pierre points out that the more
expensive space was also largerC2,000
square feet versus the 1,200 square feet of Pierre=s
spaceCand that
Tilley testified the space was three-quarters full of Horton furniture at the
time of trial.  Thus, argues Pierre,
Appellees were not damaged because (1) they ended up leasing storage space at a
lower cost per square foot and (2) by the time of trial in March 2006, they
were storing 1,500 square feet of furniture and would have outgrown Pierre=s space anyway.  But even if the alternative storage space was
less expensive on a per-foot basis, it was more expensive overall; and even if
the evidence that the amount of space eventually used by Appellees exceeded the
size of Pierre=s space
were somehow relevant to damages, there is no evidence that Appellees would
have outgrown Pierre=s
space before the lease expired in August 2004. 
Pierre also argues Appellees presented no evidence to show that if they
had more time to shop, they would have been able to lease a suitable space for
less than $700 per month.  But Texas
recognizes benefit-of-the-bargain as a measure of damages for fraud.  Formosa Plastics Corp. USA v. Presidio Eng=rs & Contractors, Inc., 960
S.W.2d 41, 49‑50 (Tex. 1998). 
Appellees bargained with Pierre for storage space for $680 per month;
what they paid in excess of that sum is a legitimate measure of damages.

Thus, we hold that the evidence is legally
sufficient to support the jury=s
fraud findings.  Further, viewing all of
the evidence, we hold that it is factually sufficient.  Because the evidence is legally and factually
sufficient to support a finding of fraud based on Pierre=s
representation that the roof did not leak, it is irrelevant whether the
evidence is insufficient to show that he did not intend to inspect the roof or
make repairs to the space, as Pierre specifically complains in eight of his
issues, and we need not address those issues. 
See Tex. R. App. P. 47.1.  Therefore, we overrule
Pierre=s issues five through eight, ten through thirteen, nineteen, and
twenty, and we do not reach his issues one through four and fifteen through
eighteen.








B.                
Existence of a
binding lease

In his ninth and fourteenth issues, Pierre argues
that Appellees could not assert a counterclaim for fraudulent inducement
because the existence of a binding, enforceable lease is a prerequisite to such
a counterclaim and Appellees took the position that there was no valid, binding
lease.  Pierre relies on the following
language from Haase v. Glazner: AWithout
a binding agreement, there is no detrimental reliance, and thus no fraudulent
inducement claim.@  62 S.W.3d 795, 798 (Tex. 2001).  He also cites Appellees= pleading where they alleged fraudulent
inducement as a defense to Pierre=s
breach of contract claim:  A[Pierre] fraudulently induced
[Appellees] into signing the lease and is, therefore, barred from enforcing
such agreement.@ 








Pierre=s
reliance on Haase is misplaced. 
In that case, the alleged unwritten agreement between the parties was
unenforceable under the statute of frauds because it was both a promise to
answer for another=s debt
and an agreement that could not be performed within one year.  Id. at 797.  Thus, there was no binding agreement between
the parties, and the plaintiff could not sue for fraudulent inducement.  Id. at 798.  In our case, Appellees contend that the lease
agreement is unenforceable because Pierre fraudulently induced them to sign it,
not for some independent reason like the statute of frauds.  To apply the rule proposed by Pierre would
impose an insoluble Catch-22 on litigants who, like Appellees, would challenge
the validity of an agreement by way of fraudulent inducement.  We therefore overrule Appellant=s ninth and fourteenth issues.

C.                
Admission of
Fryberger=s testimony

Pierre=s
twenty-first issue states that the trial court erred by admitting the testimony
of Charles Fryberger.  But Pierre wholly
fails to address this issue in the argument section of his brief.  An issue on appeal unsupported by argument or
citation to any legal authority presents nothing for the court to review.  Strange v. Cont'l Cas. Co., 126 S.W.3d
676, 678 (Tex. App.CDallas
2004, pet. denied), cert. denied, 543 U.S. 1076 (2005).  Therefore, we overrule Pierre=s twenty-first issue for inadequate
briefing.  See Tex. R. App. P. 38.1(h).

                                                                     Conclusion

Having overruled all of Pierre=s issues, we affirm the trial court=s judgment.

 

ANNE GARDNER

JUSTICE

 

PANEL A:   CAYCE, C.J.; HOLMAN and GARDNER, JJ.

 

DELIVERED:  July 19, 2007











[1]See Tex. R. App. P. 47.4.   





[2]While
the parties disagree about the condition of the roof and Pierre=s
representations regarding it, they agree that he said he would fix other
problems with the space, such as walling over a doorway to an adjacent space. 















 [JFM1]

Standard &









 [JFM2]

[Standard &]