**Emil CERULLO d/b/a New You Weight Management Center and New You Weight Management Centers, LLC, Appellants/Cross–Appellees,**

v.

**Peter GOTTLIEB, Appellee/Cross–Appellant.**

No. 05–08–01173–CV.

Court of Appeals of Texas, Dallas.

March 25, 2010.

Rehearing Overruled May 5, 2010.

---

Rebecca E. Bell, Anthony Leonard Vitullo, Fee, Smith, Sharp & Vitullo, L.L.P., Dallas, for appellants.

William N. Radford, Thompson, Coe, Cousins & Irons, LLP, Jeffrey S. Levinger and Brett Kutnick, Hankinson Levinger LLP, Jerry D. Mason, Dallas, for appellee.

Before Justices MORRIS, FRANCIS, and FILLMORE.

## OPINION

Opinion by Justice FRANCIS.

This appeal involves a five-week jury trial in which Emil Cerullo d/b/a New You Weight Management Center (Cerullo) and New You Weight Management Centers, LLC, (New You) alleged multiple causes of action against multiple defendants in a business dispute over lap band surgeries. Essentially, Cerullo and New You alleged they had entered into joint venture or partnership agreements with various defendants to develop ambulatory lap band surgery centers for weight-loss patients and to market the venture. After Cerullo and/or New You launched the marketing strategy and located potential clients, they claim the defendants cut them out and went on to profit from Cerullo's business concept. Cerullo and New You sought damages for, among other things, fraud, breach of fiduciary duty, and conspiracy.

At the close of the evidence, the trial court directed a verdict dismissing many of Cerullo's and New You's claims. Of the remaining claims, the jury found in favor of only New You on one claim, fraud, against one defendant, Peter Gottlieb, and awarded actual and punitive damages. In

response to post-judgment motions, the trial court disregarded a portion of the actual damages, reduced the punitive damages, and rendered judgment in New You's favor against Gottlieb.

Both sides appealed. New You challenges the trial court's judgment only as it relates to the damages awarded. By cross-appeal, Gottlieb challenges both the liability and damage findings. For the reasons set out below, we conclude there is no evidence to support the jury's fraud finding against Gottlieb; accordingly, we reverse the trial court's judgment and render judgment that New You take nothing on its claim.

Although we have a voluminous record before us, only New You's fraud claim against Gottlieb is at issue in this appeal.[1] Because any damage award must be predicated on a liability finding, we begin with Gottlieb's cross-appeal as it raises liability issues and restrict our recitation of the facts to those pertinent to the fraud action against Gottlieb.

Cerullo was a businessman who owned an ambulatory diagnostic imaging center in Dallas. Cerullo testified that, in early 2002, he and one of the doctors who used his center, Dr. Fred Maese, formed a joint venture/partnership to develop ambulatory centers for lap band surgeries. At the time, the lap band device had been FDA-approved for less than one year, and lap band surgeries performed in the United States were being done in hospitals. Cerullo believed prospective weight-loss candidates would prefer an outpatient setting, if available.

Early on, the men brought on Len Platt as an equal partner in their venture, hired a patient advocate, retained an architect to draw up plans for the center, traveled to Mexico to observe three lap band surgeries, and met with the manufacturer of the lap band device to discuss the procedure. In March, the joint venture/partnership approached Gottlieb about building the surgery center. At the time, Gottlieb was working with Dr. Allen Baskind, a surgeon, to build a surgery center in Richardson (Surgery Center of Richardson, or SCOR) but indicated he was interested in working on Cerullo's project. At that meeting or a later one, Gottlieb was shown the architectural plans and said he would take five-percent ownership and charge a management fee if he built the center. Cerullo said his group accepted the proposal, although he could not recall when.

Cerullo testified that, in May, he formed the entity at issue in this case, New You, with Platt and Maese as equal partners.[2] Over the ensuing months, Cerullo and/or Platt talked to surgeons about "becoming interested in learning how to install a lap band"; helped physicians get proctored to perform the procedure; met with insurance representatives about the efficacy of lap band procedures in outpatient facilities; and advertised for and conducted informational seminars to promote lap band surgeries to prospective weight-loss clients.

In August, New You entered a one-year marketing agreement with an existing facility, Plano Surgery Center (PSC), to split revenues and losses on lap band surgeries performed there. Under the agreement, New You was obligated to market lap band surgeries and, to that end, hosted semi-

---

1. Although Cerullo filed a notice of appeal and is listed as an appellant on the brief, he has not raised any issues that are relevant to him. New You has challenged the reduced damage award but has not challenged the trial court's directed verdict or any adverse jury findings.

2. Documents filed with the secretary of state showed Cerullo as the only member.

nars and engaged in radio and print advertising to attract potential clients. In return, New You received 66 2/3 percent of the net revenues of the lap band surgeries, and PSC kept the remaining 33 1/3 percent.

During this same time, Cerullo, Platt, and Maese toured the facility that was to be used as SCOR with Gottlieb and Baskind. According to Cerullo, Gottlieb suggested that, while waiting to build its own facility, New You send its clients to SCOR once it opened in January 2003. According to Cerullo, the terms were to be the same 66 2/3 to 33 1/3 split it had with PSC.

After New You contracted with PSC, communications with Gottlieb stopped for several months. When problems arose with PSC in late 2002, Cerullo told Platt to contact Gottlieb on the status of SCOR, and Platt learned SCOR's opening was going to be delayed until August 2003 because of an asbestos problem.[3] Cerullo said the parties' original agreement to split revenues and losses also changed in early 2003, ultimately resulting in a 65/35 split to bring surgeries to SCOR. Cerullo said that after the 65/35 agreement was reached, he gave Gottlieb and Baskind "virtually all of the business information and knowledge we had and the [surgeon] contacts we had" related to lap band surgery, including financial information regarding New You's relationship with PSC. Over the next several months, Cerullo said New You continued its discussions with Gottlieb, primarily through Platt, and continued to market lap band surgery.

By the spring of 2003, issues had arisen regarding the legality of the revenue-splitting arrangement between New You and PSC. New You's lawyers had advised that if New You contracted with a surgery center to generate bariatric surgeries based on the volume of surgeries performed, the agreement would constitute a misdemeanor offense under Texas law. In light of these issues, Cerullo said New You and Gottlieb decided to restructure their arrangement to a consulting agreement/marketing budget.

At Gottlieb's request, Cerullo said he and Platt came up with an inflated "budget" based on the estimated number of annual surgeries performed so as to achieve a 65/35 revenue split. The "budget" called for SCOR to pay New You a "bariatric consulting fee" of $93,750 per month for 300 surgeries and an additional consulting fee if more than 450 lap band surgeries were performed in a year at SCOR.

On June 5, Platt sent Gottlieb a list of expenses that New You "ha[d] budgeted on a monthly basis for the next year" and a draft "Consulting Agreement." Under the proposal, SCOR was to pay New You a monthly fee of $95,793.08, which comprised budgeted expenses and a 12 1/2 percent consulting fee. The next day, Gottlieb responded in writing that the "proposal" appeared "fair and reasonable" except for a line item designated as bonus. Gottlieb said he and Baskind needed more information on the "bonus" line item, explaining that the dollar amount could not be related to the volume of surgeries at the center. Gottlieb asked Platt to clarify the line item and "resubmit for our review." In closing, Gottlieb said, "We look forward to a long and successful relationship with New You Weight Management." Cerullo said that, in response, Platt told Gottlieb to eliminate the bonus line, and Gottlieb agreed.

---

3. In December, Maese left New You and the joint venture/partnership after disputes arose between him and Cerullo.

On July 17, Cerullo and Platt received a letter from New You's counsel, Bill Creasey, following up on a discussion he had with them days earlier. In the letter, Creasey again advised that any arrangement for marketing services that was based on patient volume would be illegal and would constitute a misdemeanor violation of law. Platt showed this letter to Gottlieb. On July 23, Cerullo received an email from Baskind and Gottlieb rejecting "an exclusive marketing agreement" with New You because it was not in SCOR's best interest. Eight days later, SCOR opened using surgeons that Cerullo said either he or Platt introduced to Gottlieb and a former New You employee. At about the same time, Platt quit New You and assigned his interest in the company to Cerullo. Cerullo never contacted Baskind after receiving the email and only talked to Gottlieb three months later when Cerullo asked him to advertise on a New You radio show.

Cerullo testified that in reliance on Gottlieb's promises to do business with New You, expenses were incurred in hiring employees, retaining employees, and marketing the lap band surgeries though radio and print advertising and conducting seminars, although he was not always clear as to which particular entity incurred those expenses. Additionally, in reliance on Gottlieb's promises, he said he did not build a surgery center, he introduced Gottlieb to surgeons that eventually went to SCOR, and he provided Gottlieb all of the information he had developed for his business plan.

With respect to the plan to build a surgery center, Platt's testimony differed somewhat from Cerullo's. Platt, who was Cerullo's partner in New You and the one who handled the negotiations with Gottlieb, testified Gottlieb told them it would take eighteen months to build a new surgery center. After meeting with Gottlieb and PSC, Platt said he and Cerullo decided they wanted to provide services "sooner than later by working with already established outpatient ambulatory surgery centers" and entered a contract with PSC. After they struck a deal with PSC, Platt said he continued to talk to Gottlieb to keep New You's options open. He also said that while he and Cerullo thought they would "eventually" build a center, they "never pulled the trigger."

As for the proposed business deal with SCOR, Baskind explained his reasons for declining New You's proposal and explained his and Gottlieb's roles. Although both Cerullo and Platt testified that Baskind was involved in the negotiations from the beginning (albeit to a lesser degree than Gottlieb), Baskind testified he first met Cerullo and Platt in the spring of 2003 through Gottlieb. After meeting Cerullo and Platt, Baskind had Gottlieb handle discussions regarding a marketing agreement to bring bariatric patients to SCOR, but only Baskind was authorized to make a final decision.

When Gottlieb presented New You's proposed marketing budget to him in June, he and Gottlieb had extensive discussions over it, including the bonus line item. Over the ensuing six weeks, Baskind testified he analyzed the budget, performed due diligence, and consulted with legal counsel, leaving him with some concerns, two of which were the cost and legality of New You's proposal.

As for cost, Baskind explained he had no way of knowing whether SCOR would be successful, and New You's budget was a "huge sum of money," $1.2 million over the course of a year, when he was already in a "precarious financial state." Moreover, Baskind said the proposal provided for no measurement of New You's performance. As Baskind explained, New You could pro-

mote lap band surgery for SCOR all it wanted, but it had no control over where the surgeries were performed because the patient and surgeon made that choice.

As for the legality of the proposal, Baskind believed it was in "clear violation" of anti-kickback statutes because it appeared to be based on "paying for patients." Baskind explained that the "substance of the deal" was more important than its form or "cloak," and he was concerned the payments under the agreement "could be construed as being a different way of paying for referrals."

A lesser consideration was his concern with Cerullo. Baskind testified that during the time he was performing due diligence, Cerullo showed up at SCOR unannounced and appeared to be "under the influence of something." Baskind then learned from Gottlieb that Cerullo had a prior narcotics conviction, leaving him with a concern that his pharmacy license could be put at risk if he approved the agreement. Given these concerns, Baskind believed the proposal was "a very one-sided contract" that put SCOR at too great a risk and instructed Gottlieb to notify Cerullo and Platt that he was not interested.

Gottlieb testified that he discussed building a surgery center for Cerullo and Platt, but they "really didn't have their ducks in a row" and the idea was never really revisited after the initial meeting. Instead, during 2002 and 2003, Gottlieb said he explored several different business alternatives and relationships so that New You could provide lap band patients and marketing for SCOR. In these discussions, he dealt primarily with Platt in trying to put a deal together. He discussed the ongoing proposals with Baskind, who had concerns "pretty much from the beginning," and made clear to Cerullo and Platt that Baskind, as SCOR's owner, made the ultimate decision.

Finally, Creasey and Andy Meyercord were legal counsel for New You and PSC, respectively, during the relevant time period. Both testified about a meeting between New You and PSC representatives in January 2003 regarding the legality of their marketing contract (which was the model used by New You in its discussions with Gottlieb). Both testified they believed the agreement was illegal because it provided for marketing services in exchange for payments on a per patient basis, and those at the meeting were aware of their opinions. Platt was present at this meeting. Further, Creasey confirmed that he discussed the issue again with Platt and Cerullo that summer and again advised that any arrangement that involved payment on the number of surgeries was illegal. Creasey followed up that discussion with the July 17 letter that Platt showed to Gottlieb.

■ In the first issue of his cross appeal, Gottlieb asserts the evidence is legally insufficient to support the jury's fraud finding, in part, because there was no evidence presented that Gottlieb did not intend to keep his promises at the time he made them.

When, as here, an appellant attacks the legal sufficiency of an adverse finding on an issue on which it did not have the burden of proof, it must demonstrate that no evidence supports the finding. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983). We review the evidence presented at trial in the light most favorable to the jury's verdict, crediting evidence favorable to that party if reasonable jurors could and disregarding evidence unless reasonable jurors could not. *Guevara v. Ferrer*, 247 S.W.3d 662, 665 (Tex.2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex.2005). Anything more than a "scintilla of evidence" is legally sufficient to support the

jury's finding. *Cont'l Coffee Prods., Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex.1996). To be more than a scintilla, the evidence must rise "to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 25 (Tex.1994).

A promise to do an act in the future constitutes fraud only when made with no intention of performing the promise at the time the promise was made. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex.1998); *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex.1986). As the supreme court has recognized, proving that party had no intention of performing at the time the promise was made is "not easy" because intent to defraud is not usually susceptible to direct proof. *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 305 (Tex.2006). The mere failure to subsequently perform a promise, standing alone, is not evidence of fraud. *Formosa*, 960 S.W.2d at 48. Similarly, denying that an alleged promise was ever made is not legally sufficient. *Tony Gullo*, 212 S.W.3d at 305. Usually, successful claims have involved confessions by the defendant or its agents of the requisite intent. *See id.* (citing *Formosa*, 960 S.W.2d at 48 and *Spoljaric*, 708 S.W.2d at 434–35).

However, "slight circumstantial evidence" of fraud, when considered with a breach or promise to perform, is sufficient to support a finding of fraudulent intent. *Spoljaric*, 708 S.W.2d at 435 (quoting *Maulding v. Niemeyer*, 241 S.W.2d 733, 738 (Tex.Civ.App.-El Paso 1951, orig. proceeding)). The evidence presented must have been relevant to the defendant's intent at the time the promise was made. *Formosa*, 960 S.W.2d at 48. "Intent tends to be a fact question uniquely within the realm of the trier of fact because it so depends on the credibility of witnesses and the weight given to their testimony." *Spoljaric*, 708 S.W.2d at 434. However, evidence "so weak that it creates only a mere surmise or suspicion of its existence ... constitutes no evidence." *See T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 222 (Tex.1992).

In its responsive brief, New You asserts that Gottlieb made "general and specific" promises over the course of eighteen months, and then recites the following five promises: (1) Gottlieb would build a surgical facility for bariatric surgeries, (2) Gottlieb would manage the facility for a five percent management fee, (3) Gottlieb "invited" New You "to join the business plan of the surgical center he was building with Baskind in lieu of an independent facility[,]" (4) Gottlieb's surgical center would be more profitable and reliable than the plan in place by New You for interim surgeries, and (5) the development of the bariatric side required the "continued sharing of information, marketing, doctors, personnel, and patients by New You in the months prior to and initial months of operation of the new surgical center."

New You does not present separate argument as to each of these promises, but generally presents a chronology of events relating to promises made by Gottlieb and New You's reliance on those promises. Then, New You asserts that Gottlieb's "deceitful business practices and intentions" can be gleaned by comparing his representations to New You with "the reality as viewed by Baskind." In particular, New You relies on Baskind's testimony that he knew nothing about Cerullo or his desire to build a surgery center or to engage in business with SCOR until April 2003, one year after Gottlieb first met Cerullo and Platt. This argument, however, is belied by the testimony of New You's partners, Cerullo and Platt, that Baskind was involved in the discussions from the begin-

ning and was present during various meetings, albeit to a lesser extent than Gottlieb. Platt testified that in 2002, he met with Baskind five to six times, and in 2003, saw him thirty to forty times. Both Cerullo and Platt testified that Baskind was present during the summer 2002 tour of the unrenovated SCOR facility (where Gottlieb offered the facility as an interim site for New You clients until New You could build its own center), and both testified that Baskind agreed to some of the various deals. Given New You's theory of the case and the evidence it presented, we question whether a reasonable jury could disregard New You's own evidence regarding the timing of Baskind's involvement.

But even if it could, Gottlieb's failure to apprise Baskind of all the details of the ongoing negotiations with New You is no evidence that Gottlieb had no intent to perform at the time he made the representations. To the contrary, it was undisputed that Gottlieb, who had authority to negotiate with New You, did present New You's proposed consulting agreement/marketing budget to Baskind. This consulting agreement/marketing budget was an alternative arrangement devised after legal issues arose over the profit allocation deal New You had with PSC. Baskind, who had sole authority to approve or disapprove the proposal, spent several weeks analyzing the numbers, performing due diligence, and consulting with legal counsel, before he decided to reject it, primarily because of cost and legality concerns.

The facts of this case are comparable to those in *T.O. Stanley Boot Co.* There, the plaintiffs alleged the bank misrepresented it would loan them $500,000. At trial, the bank's president denied that he agreed to make the loan. 847 S.W.2d at 222. Additionally, the plaintiffs referred to a memorandum, written shortly after a meeting in which the loan was discussed, in which a

bank officer referred to compiling resumes for a Small Business Administration loan package, thereby suggesting the bank was looking at alternative sources for the plaintiffs to obtain the loan. The supreme court concluded this evidence was "so weak it constitutes no evidence" of the bank's intention not to perform.

As in *T.O. Stanley,* the fact that Gottlieb failed to perform on his promises, standing alone, is not evidence of a lack of intent to perform at the time he made the promises, but is only a circumstance to be considered with other facts. Moreover, the other fact relied on by New You—specifically, Gottlieb's purported failure to apprise Baskind of the various deals—is simply no evidence of Gottlieb's intent not to perform, just as the bank's looking into alternative loan sources was no evidence of the bank's intent not to perform in *T.O. Stanley.* We sustain Gottlieb's first issue. Our disposition of this issue makes it unnecessary to address Gottlieb's remaining issues. *See* TEX.R.APP. P. 47.1. Further, because we have concluded there is no evidence to support the fraud finding, the damage findings are immaterial and we do not reach the issues presented by New You's appeal.

We reverse the trial court's judgment and render judgment that New You take nothing on its fraud claim against Gottlieb.